## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**AMJAD MASAD,**

                Plaintiff,

v.

**RANDALL FINE,** in his official
capacity as a Member of the
United States House of Representatives
and in his individual capacity,

                Defendant.

**Case No. 6:26-cv-00442**

**Thirty Minutes Oral
Argument Requested**

---

## <u>NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION</u>

i

## NOTICE OF MOTION AND MOTION TO THE HONORABLE COURT AND TO ALL PARTIES:

PLEASE TAKE NOTICE that Plaintiff hereby moves for a preliminary injunction enjoining Defendant from continuing to block Plaintiff from Defendant's Official X Account, and ordering Defendant to unblock Plaintiff. As explained in detail in the accompanying memorandum, Defendant operates his Official X Account as an interactive public forum for speech and engagement on governmental matters and excluded Plaintiff from that forum in retaliation for Plaintiff's protected political expression, in violation of the First Amendment. Defendant's viewpoint-based blocking of Plaintiff constitutes ongoing constitutional injury. The Eleventh Circuit recognizes that the loss of First Amendment freedoms, even for minimal periods of time, constitutes irreparable harm. Because Plaintiff is likely to succeed on the merits of his First Amendment claims, and because Defendant's conduct continues to silence Plaintiff in an official government communications forum, the balance of equities and public interest favor immediate injunctive relief. Accordingly, Plaintiff respectfully requests that the Court grant this Motion, hold a hearing as soon as practicable, and preliminarily enjoin Defendant from continuing to block Plaintiff from Defendant's Official X Account during the pendency of this litigation.

DATED: March 3, 2026

*/s/ Malak Afaneh*
Staff Attorney
mafaneh@adc.org

*Attorney for Plaintiff*

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................1

STATEMENT OF FACTS .................................................................................3

   I.   DEFENDANT'S OFFICIAL X ACCOUNTS ..............................................3

   II.   PLAINTIFF'S SPEECH ..........................................................................6

   III.   DEFENDANT'S VIEWPOINT-DISCRIMINATORY BLOCKING OF PLAINTIFF ........8

LEGAL STANDARD .......................................................................................10

ARGUMENT ...................................................................................................11

   I.   PLAINTIFF HAS DEMONSTRATED A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF HIS FIRST AMENDMENT CLAIM ...................................11

      A.   *Defendant Acted Under Color of State Law When Operating His Official X Account* ..............................................................................................11

      B.   *Defendant Opened a Public Forum and May Not Exclude Speakers Based on Viewpoint* ........................................................................................13

      C.   *Defendant Blocked Plaintiff Because of His Protected Political Speech* ..................15

   II.   PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION, AND THE BALANCE OF EQUITIES AND PUBLIC INTEREST WEIGH HEAVILY IN PLAINTIFF'S FAVOR ...................................................17

   III.   NO IMMUNITY DEFENSE BARS PROSPECTIVE RELIEF ..................................18

      A.   *Sovereign Immunity Does Not Bar Prospective Relief* ......................................18

      B.   *Legislative Immunity Does Not Apply* ...........................................................19

CONCLUSION ................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Attwood v. Clemons,*

    526 F. Supp. 3d 1152 (N.D. Fla. 2021) ...............................................................22

*Attwood v. Clemons,*

    818 F. App'x 863 (11th Cir. 2020) .....................................................................22

*Bear v. Escambia Cnty. Bd.,*

    2023 U.S. Dist. LEXIS 50924 (N.D. Fla. Mar. 24, 2023) ...................................3,

*Brown v. Entm't Merchants Ass'n,*

    564 U.S. 786, 790 (2011) ...............................................................................3, 23

*Cohen v. California,*

    403 U.S. 15 (1971) ...........................................................................................22

*Cornelius v. NAACP Legal Def. & Educ. Fund,*

    473 U.S. 788 (1985) .........................................................................................22

*Elrod v. Burns,*

    427 U.S. 347 (1976) .........................................................................................22

*Ex parte Young,*

    209 U.S. 123 (1908) .........................................................................................22

*FF Cosmetics FL, Inc. v. City of Miami Beach,*

    866 F.3d 1290 (11th Cir. 2017) .........................................................................22

*Gravel v. United States,*

408 U.S. 606 (1972) ........................................................................22

*Grizzle v. Kemp*,

634 F.3d 1314 (11th Cir. 2011) ....................................................22

*Hans v. Louisiana*,

134 U.S. 1 (1890) ..........................................................................22

*KH Outdoor, LLC v. City of Trussville*,

458 F.3d 1261 (11th Cir. 2006) ....................................................22

*Knight First Amendment Inst. at Columbia Univ. v. Trump*,

928 F.3d 226 (2d Cir. 2019) .........................................................22

*Lindke v. Freed*,

601 U.S. 187 (2024) ......................................................................22

*Lugar v. Edmondson Oil Co.,*

457 U.S. 922 (1982) ......................................................................22

*Manhattan Cmty. Access Corp. v. Halleck*,

139 S. Ct. 1921 (2019) ..................................................................22

*Nken v. Holder*,

556 U.S. 418 (2009) ......................................................................22

*Otto v. City of Boca Raton*,

981 F.3d 854 (11th Cir. 2020) ......................................................22

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,

460 U.S. 37 (1983) ........................................................................22

*Pleasant Grove City v. Summum,*

    555 U.S. 460 (2009) ...................................................................22

*Reed v. Town of Gilbert,*

    576 U.S. 155 (2015) ...................................................................22

*Tanner v. Ziegenhorn,*

    No. 4:17-cv-780-DPM, 2021 U.S. Dist. LEXIS 187782
    (E.D. Ark. 2021) .......................................................................22

*United States v. Classic,*

    313 U.S. 299 (1941) ...................................................................22

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,*

    535 U.S. 635 (2002) ...................................................................22

*West v. Atkins,*

    487 U.S. 42 (1988) .....................................................................22

*W. Va. State Bd. of Educ. v. Barnette,*

    319 U.S. 624 (1943) ...................................................................22

*Yeldell v. Cooper Green Hosp., Inc.,*

    956 F.2d 1056 (11th Cir. 1992) ..................................................22

**Constitutional Provisions**

U.S. Const. art. I, § 6, cl. 1 ..................................................................22

U.S. Const. amend. I ...........................................................................22

U.S. Const. amend. XI .........................................................................22

**Statutes**

42 U.S.C. § 1983 ....................................................................22

**Other Authorities**

*Amjad Masad (@amasad)*, X Profile,

    https://x.com/amasad.............................................................22

*Amjad Masad (@amasad)*, Post on X (May 13, 2025),

    https://tinyurl.com/yc8kvnex ................................................22

*Amjad Masad (@amasad)*, Post on X (Dec. 29, 2024),

    https://tinyurl.com/46k8ybkm................................................22

*Amjad Masad (@amasad)*, Post on X (Feb. 15, 2026),

    https://tinyurl.com/4mw3afx8................................................22

*Randy Fine (@repFine)*, Post on X (Feb. 12, 2026),

    https://tinyurl.com/bd99f287.................................................22

*Randy Fine (@repFine)*, Post on X (Feb. 13, 2026),

    https://tinyurl.com/fs4eajbj..................................................22

*Randy Fine (@repFine)*, Post on X (Feb. 17, 2026),

    https://tinyurl.com/477fxm87................................................22

*Randy Fine (@repFine)*, Post on X (Feb. 20, 2026),

    https://tinyurl.com/ccawb5dd................................................22

*Randy Fine (@repFine)*, Post on X (Feb. 23, 2026),

    https://tinyurl.com/3ntky8ft..................................................2

## MEMORANDUM OF POINTS AND AUTHORITIES

## <u>INTRODUCTION</u>

Last month, U.S. Representative Randall Fine, an elected member of Congress representing Florida's Sixth Congressional District, used his Official X Account to publish a post comparing Muslims to dogs. When Plaintiff responded with a comment critical of Defendant's statements, Defendant blocked Plaintiff from his Official X Account and hid the comment—preventing Plaintiff's participation in real-time public discourse in violation of his First Amendment rights. Plaintiff seeks preliminary injunctive relief to end this ongoing constitutional injury.

In order to show his entitlement to a preliminary injunction, Plaintiff must demonstrate: (1) a substantial likelihood of success on the merits of his claim; (2) irreparable harm absent injunctive relief; (3) that the balance of equities favors the movant; and (4) that the injunction would not disserve the public interest. *See Nken v. Holder*, 556 U.S. 418, 434 (2009); *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009). And in the First Amendment context, the Eleventh Circuit has made clear that once a plaintiff demonstrates a substantial likelihood of success on the merits, the remaining preliminary injunction factors follow**.** *See Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020); *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017); *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006).

Here, Defendant's action unquestionably violates Plaintiff's First Amendment rights. Under controlling Supreme Court precedent, a public official's social-media account constitutes a public forum for First Amendment purposes if the official possesses actual authority to speak on the government's behalf and exercises that authority in the forum in question. *See Lindke*, 601 U.S. 187. Where a government actor blocks a user from an account operated in an official or mixed-use capacity, the court must assess whether the official engaged in state action with respect to any post on which the plaintiff wished to comment. *Id.* at 204. If so, the blocking is unconstitutional.

Defendant operates the account at issue to announce positions, communicate with constituents and members of the public, and invite engagement on matters of public concern. Plaintiff's reply constituted core political speech addressing those official statements. Defendant's response was not to moderate a comment thread but to block Plaintiff from the account entirely and silence the comment he already made by hiding it, barring him from present and future participation in Defendant's official communications forum.

Courts have repeatedly recognized that blocking users from official social-media accounts based on viewpoint violates the First Amendment because it constitutes total exclusion from a public forum.  *See*, *e.g.*, *Attwood v. Clemons*, 818 F. App'x 863, 867 (11th Cir. 2020). Since Defendant continues to block Plaintiff, the constitutional injury is ongoing.

The Eleventh Circuit has made clear that infringements of First Amendment freedoms of any kind constitute irreparable harm. In the absence of preliminary injunctive relief, Plaintiff will remain unable to participate in real-time political discourse occurring in response to Defendant's posts each time Defendant publishes an official statement and invites public discourse.

The balance of equities weighs heavily in Plaintiff's favor, as public officials have no legitimate interest in violating individuals' First Amendment rights. By contrast, it is in the public interest to ensure that government officials may not curate official communication channels to amplify supportive speech while silencing critics and prohibiting their access to those channels. The Constitution requires that official forums remain open to all viewpoints.

Consequently, a preliminary injunction is warranted as soon as is technically feasible. For these reasons, as well as those set forth below, Plaintiff respectfully requests that the Court grant a hearing as soon as is practicably possible, and ultimately declare Defendant's viewpoint-based blocking unconstitutional and enjoin Defendant from continuing to exclude Plaintiff from his Official X Accounts.

## STATEMENT OF FACTS

### I.    DEFENDANT'S OFFICIAL X ACCOUNTS

Defendant Randy Fine maintains and controls one or more accounts on X that are held out as official channels of his office (collectively, the "Official X Accounts"), including **@repfine** and **@voterandyfine**. (Declaration of Amjad Masad,

*attached as* Exhibit A ("Masad Decl.") ¶¶ 9-13). Defendant's @repFine account links directly to his official government webpage, fine.house.gov, lists his location as Washington, D.C.—the seat of his official duties—and identifies him as "Husband and father proudly serving Florida's 6th Congressional District. Pronouns: Hebrew/Hammer." Masad Decl. ¶¶ 9-13.

Through these accounts, Defendant publishes official statements, comments on public policy, and addresses matters relating to his work as a United States congressman, including legislative activity, governmental services, constituent issues, and official events. Masad Decl. ¶11.

For example, on February 19, Defendant announced in an X post from his @repfine account that he had introduced legislation titled the "Protecting Puppies from Sharia Act," described the bill's provisions in the post, and framed the issue as a matter of national policy. Compl., ECF No. 1 ¶12. He has likewise used this account to advocate for the SAVE Act and mandatory photo identification for voters; to announce his support for a USDA disaster declaration on behalf of Florida farmers and ranchers; and to comment on foreign affairs and public safety, including posts regarding events in the West Bank and related commentary about Palestinians and dogs. *See e.g., Randy Fine (@repFine),* X (Feb. 13, 2026), https://tinyurl.com/fs4eajbj (last visited Feb. 25, 2026); *Randy Fine (@repFine),* X (Feb. 12, 2026), https://tinyurl.com/bd99f287 (last visited Feb. 25, 2026); *Randy Fine (@repFine),* X (Feb. 17, 2026), https://tinyurl.com/477fxm87 (last visited Feb. 25, 2026).

Not only does Defendant use his Official X Accounts to announce legislative and policy positions and advocate for certain policies.  He also uses them to engage directly with members of the public by enabling replies, quote-posts, reposts, and discussion threads beneath his posts. *Id.* ¶¶ 9-13. These interactive features permit users to respond to Defendant's statements, exchange views with one another, and participate in ongoing conversations about Defendant's official conduct. *Id.*

Defendant does not restrict access to the Official X Accounts or their interactive features to residents of his congressional district. *Id.*  Members of the public nationwide (in fact, worldwide) may view Defendant's posts, reply, and participate in discussion threads. *Id.* Defendant does not—and cannot—determine the geographic location or residence of most users before allowing or denying access to the forum. *Id.*

Even Defendant's purportedly "personal" posts remain intertwined with his public office and political messaging. For example, shortly after announcing the "Protecting Puppies from Sharia Act," Defendant posted a photograph of a dog captioned "busy next week?", reinforcing the legislative narrative he had placed before the public. *See Randy Fine (@repFine),* X (Feb. 20, 2026), https://tinyurl.com/ccawb5dd (last visited Feb. 25, 2026).  Defendant also posted a tribute to his late mother that included an image of her seated in his congressional chair—explicitly situating the post within the physical space and symbolism of his elected office. *See Randy Fine (@repFine),* X (Feb. 23, 2026), https://tinyurl.com/3ntky8ft (last visited Feb. 25, 2026).  These posts, like Defendant's overtly political statements, are presented to the same audience, within

the same forum, and in the same official context Defendant uses to announce legislation and advocate policy positions. Accordingly, even Defendant's purportedly "personal" content is inextricably linked to his role as an elected official and his use of the accounts as vehicles for public-facing governmental communication.

## II.    PLAINTIFF'S SPEECH

Plaintiff Amjad Masad maintains an active public presence on X, where he has more than 428,000 followers and regularly engages in political discussion on matters of public concern, including U.S. domestic policy, immigration, and foreign affairs. *See Amjad Masad (@amasad),* X https://x.com/amasad (last visited Feb. 25, 2026). As a Muslim immigrant from Jordan with roots in Palestine, a resident of California, and a United States citizen, Masad cares deeply about domestic and international policy. Masad Decl. ¶¶ 1-8. For example, Plaintiff has posted commentary regarding U.S. foreign policy toward Syria, including discussion of U.S. sanctions and their humanitarian and geopolitical consequences. *See Amjad Masad (@amasad),* X (May 13, 2025) https://tinyurl.com/yc8kvnex (last visited Feb. 25, 2026). Plaintiff has also publicly expressed views on immigration policy, emphasizing that immigration benefits the United States and contributes to its economic strength and civic life. *See Amjad Masad (@amasad),* X (Dec. 29, 2024), https://tinyurl.com/46k8ybkm (last visited Feb. 25, 2026). Through these posts, Plaintiff participates in ongoing public debate about national policy and international affairs.

6

On February 12, 2026, Nerdeen Kiswani, a Palestinian American activist and organizer, made a comment on X in the context of a local discussion about dog owners who had not cleaned up after their pets in New York City. Kiswani's post stated: "Finally, NYC is coming to Islam. Dogs definitely have a place in society, just not as indoor pets. Like we've said all along, they are unclean." Compl., ECF No. 1 ¶18. Kiswani's comment included language about Islam and dogs that she later described as a satirical remark reflecting a hyper-local conversation about dog waste, not an actual call for policy or action. *Id.*

On February 15, 2026, Defendant responded from his Official Account: "If they force us to choose, the choice between dogs and Muslims is not a difficult one." Masad Decl. ¶16. Defendant's post was not isolated and, viewed in the context of a plethora of public remarks, reflect his antipathy and bigotry toward Muslims, Arabs, and Palestinians. *Id.* ¶¶14, 17. For example, in prior posts on X, Defendant replied to the State of Palestine's official account stating, "You teach Muslim terror. We will NEVER FORGET"; called for the Mayor of New York City, Zohran Mamdani, to be denaturalized and deported while blaming him for what Defendant described as a rise in "Muslim terror"; and separately stated that "Palestinian is a synonym for evil." *Id.* ¶15; Compl., ECF No. 1 ¶20.  These statements were made on or about February 12–14, 2026 and are consistent with years of similar public commentary demonstrating Defendant's longstanding hatred of Muslims, Arabs, and Palestinians. Masad Decl. ¶¶14, 17.

Plaintiff replied to Defendant's post about choosing between dogs and Muslims with a sarcastic political comment: "Are you talking about what's for lunch?" Masad Decl. ¶¶ 18-19. As a Muslim and Arab immigrant, Plaintiff responded because of the overt Islamophobia and anti-Arab racism reflected in Defendant's post and prior remarks. *Id.* Plaintiff's reply expressed disagreement with Defendant's views and actions as an elected official and addressed issues of public policy and government conduct.

### III.    DEFENDANT'S VIEWPOINT-DISCRIMINATORY BLOCKING OF PLAINTIFF

Less than half an hour after Plaintiff posted his response, Defendant prohibited Plaintiff from interacting with Defendant's Official X account by activating the platform's "block feature." Masad Decl. ¶ 20. As a result of the block, Plaintiff is and remains unable to reply to Defendant's posts, repost Defendant's posts, participate in discussion threads beneath Defendant's statements, and otherwise engage with other users in the interactive space Defendant created. Plaintiff is excluded from the forum in its entirety, rather than from any single post or comment. Defendant's blocking of Plaintiff remains in effect as of the date of this filing. *Id.* ¶22.

In addition to blocking Plaintiff, Defendant also hid Plaintiff's reply to the underlying post. *Id.* ¶20. By hiding the comment, Defendant ensured that Plaintiff's criticism would not be visible within the discussion thread beneath Defendant's official statement. This action further prevented Plaintiff from participating in the interactive forum Defendant created for public discourse.

8

Defendant has engaged in a broader pattern of blocking critics from his Official X Account based on their political viewpoints while continuing to permit favorable commentary; in other words, his exclusion of Plaintiff is consistent with a pattern of selectively silencing dissenting speech and criticism. Compl., ECF No. 1 ¶28. For example, in February 2026, Defendant blocked Aaron Baker, who is challenging Defendant in the Republican primary, after Baker criticized Defendant's official positions. *Id.* On Feb 25, 2026, Plaintiff posted on X, "Congresswhale @RepFine blocked me, which is illegal per Supreme Court ruling on 1st amendment. Should I sue?" *See Amjad Masad (@amasad),* X (Feb. 15, 2026), https://tinyurl.com/4mw3afx8 (last visited Feb. 25, 2026). In response to Plaintiff's posts, more than a dozen X users alleged that Defendant had also blocked them, further evidencing Defendant's pattern of excluding disfavored speakers from his official forum.

Plaintiff's exclusion also impairs his ability to engage in the broader conversations that take place in Defendant's comment threads. Because Plaintiff cannot  reply to Defendant's posts while logged into his account, it is difficult for Plaintiff to follow the discussions unfolding beneath those posts and to participate meaningfully alongside other members of the public. As a result of Defendant's block, Plaintiff is burdened in his ability to respond to Defendant's statements in context and engage with other users in real time.

Absent injunctive relief, Plaintiff will remain excluded from this forum and unable to participate in Defendant's official communication space on equal terms with other members of the public.

**LEGAL STANDARD**

A preliminary injunction is appropriate if the Plaintiff demonstrates: (1) a substantial likelihood of success on the merits; (2) irreparable injury absent the emergency relief; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *See Nken,* 556 U.S. at 434; *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (citation modified).

The Supreme Court has repeatedly held that the "loss of First Amendment freedoms, even for minimal periods of time, [is an] irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). And in the Eleventh Circuit, once a plaintiff demonstrates "a substantial likelihood of success on a First Amendment claim, the remaining preliminary injunction factors typically follow." *See Otto,* 981 F.3d at 870; *FF Cosmetics*, 866 F.3d at 1298 (holding that ongoing First Amendment violations constitute irreparable harm); *KH Outdoor,* 458 F.3d at 1272 ("even a temporary infringement of First Amendment rights constitutes a serious and substantial injury," and the government has "no legitimate interest in enforcing an unconstitutional" restriction on speech, so an injunction "plainly is not adverse to the public interest" because "[t]he public has no interest in enforcing an unconstitutional" practice).

## ARGUMENT

### I.   PLAINTIFF HAS DEMONSTRATED A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF HIS FIRST AMENDMENT CLAIM

#### A.   *Defendant Acted Under Color of State Law When Operating His Official X Account*

Government actors may be sued under 42 U.S.C. § 1983 for violating an individual's constitutional rights when their conduct is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  A public official's social-media activity may be attributable to the state—otherwise known as "state action" —where the official (1) possessed actual authority to speak on the government's behalf and (2) purported to exercise that authority in the challenged activity. *See Lindke,* 601 U.S. 187; *West v. Atkins*, 487 U.S. 42, 49 (1988) (explaining that state action exists where the defendant exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.") (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). The misuse of such authority likewise constitutes action under color of law. *Lindke*, 601 U.S. at 199–200.

Both the Supreme Court and the Eleventh Circuit recognize that social media accounts used by government actors to make official statements, communicate with constituents, and share legislative activity constitute state conduct where the accounts bear the indicia of public office. *See Lindke,* 601 U.S. at 198–99; *Attwood,* 818 F. App'x at 867–69  (holding that a legislator acted under color of law where his account made official statements, communicated with the public, shared legislative activity, and was "adorned with all the trappings of his state office," making it "an extension of [his]

role in state office"). *See also Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 235–36 (2d Cir. 2019) (holding that the President acted in his official capacity when he blocked critics from an account used to announce official matters and whose "interactive features [were] open to the public," making public engagement a "prominent feature" of the forum); *Bear v. Escambia Cnty. Bd.*, 2023 U.S. Dist. LEXIS 50924, at *19–20 (N.D. Fla. Mar. 24, 2023) (quoting *Davison v. Randall*, 912 F.3d 666, 680 (4th Cir. 2019)) (noting that where blocking is carried out by virtue of authority over an official account—authority private citizens do not possess—the conduct is attributable to the State).

Importantly, the Supreme Court addressed precisely this issue in *Lindke*, in which it established the two-step inquiry discussed *supra*, at 11. 601 U.S. at 198–99. With respect to the first step, the Court emphasized that "[t]he inquiry is not whether making official announcements could fit within the job description; it is whether making official announcements is actually part of the job that the State entrusted the official to do." *Id.* at 200. The constitutional analysis therefore turns on the official's entrusted authority and the functional use of the account—not on whether the official has labeled the account "personal." Defendant satisfies both requirements articulated in *Lindke*. As discussed in the Statement of Facts in the context of Defendant's Official X Accounts, Defendant uses the account to announce legislation, promote policy positions, and communicate governmental action to constituents. He has publicly broadcast his introduction of federal legislation, described its provisions, and framed it as national policy, and he routinely addresses matters of public concern through the

account. The account is presented as an official vehicle of governance: it links to Defendant's congressional webpage, identifies him as the representative of Florida's Sixth Congressional District, lists Washington, D.C. as his location, and bears X's government verification badge. These objective features demonstrate that Defendant exercises official authority through the account.

Assuming solely for the sake of argument that Defendant's @repfine X account is "mixed use"—both personal and professional—that does not change the result here. Because blocking prevents access to the entire account rather than to discrete posts, an official who chooses to use a single account for official communications cannot exclude critics without implicating the First Amendment. *See Lindke*, 601 U.S. at 202, 204 (explaining that page-wide blocking can restrict access to official communications). Defendant's account is explicitly titled "Congressman Randy Fine," prominently linked to official governmental webpages, and regularly used to announce and promote legislative activity. Even if the account contains occasional personal content, Defendant's consistent use of it to conduct public-facing governmental communication renders his actions attributable to the State, in contrast to the account in *Lindke* that the Court ultimately deemed personal.

B. *Defendant Opened a Public Forum and May Not Exclude Speakers Based on Viewpoint*

When the government creates a forum for expressive activity, it is constrained by the First Amendment. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1930 (2019) (explaining that when the government provides a forum for speech, it may

not exclude speakers on the basis of viewpoint). Viewpoint discrimination is prohibited not only in traditional and designated public forums, but also in limited and nonpublic forums. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 469–70 (2009); *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 806 (1985); *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992).

These principles apply fully in the digital context. The Supreme Court has made clear that the "basic principles of freedom of speech… do not vary" when new communication technologies emerge. *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790 (2011). Courts have therefore recognized that social media accounts used by public officials as channels of communication may constitute public forums subject to ordinary First Amendment constraints. *See Knight*, 928 F.3d at 236–37.

An account used for official governmental purposes is, almost by definition, a public forum when its interactive features are opened to the public broadly. Thus, for largely the same reasons discussed in Section I.A regarding Defendant's official use of the @repfine account, that account constituted a public forum for First Amendment purposes. Defendant intentionally enabled replies, reposts, and other interactive features, inviting members of the public to engage with his official statements on legislative and policy matters. When a government official opens a channel of communication for broad public participation, the First Amendment constrains the exclusion of speakers from that forum. *See Cornelius*, 473 U.S. at 802; *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 47 (1983).

14

Blocking a user from such an account excludes that individual from participating in a public forum. A blocked user cannot reply to posts, repost them, or express approval through platform features such as "likes." Replies and reposts are direct expressive communications, and even a "like" conveys a symbolic message protected by the First Amendment. *See generally W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 632–33 (1943). Because these forms of expression are visible to other users in addition to the account holder, and permit interaction with them, blocking prevents participation in the interactive forum altogether. Defendant went further still by hiding Plaintiff's reply from the discussion thread beneath his official post, ensuring that Plaintiff's criticism would not be visible to other participants in the discussion. That selective removal of a dissenting viewpoint from the forum reinforces that Plaintiff was excluded because of his message, not pursuant to any neutral rule of conduct, violating Plaintiff's First Amendment rights. *See Knight*, 928 F.3d at 237–38.

## C. *Defendant Blocked Plaintiff Because of His Protected Political Speech*

The First Amendment prohibits the government from excluding speakers from a public forum based on viewpoint.

As the Second Circuit explained, an official operating a public social media account is merely "one of thousands of recipients of the messages" users seek to communicate. *Knight*, 928 F.3d at 238. While Defendant is under no obligation to respond to or engage with every critic, once he opens the interactive features of his account to the public at large, he may not bar specific users because he disagrees with

15

their view. In a designated public forum, reasonable time, place, and manner restrictions may be permissible. But content-based restrictions must satisfy strict scrutiny, and viewpoint discrimination is categorically prohibited. *See Summum*, 555 U.S. at 469–70; *Bear*, 2023 U.S. Dist. LEXIS 50924, at *21–24 (applying *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). A regulation is content-based if it draws distinctions based on the topic discussed or the message expressed. *Reed*, 576 U.S. at 163. Courts have also rejected attempts to exclude speakers from designated public forums merely because their speech is offensive or profane. *See Cohen v. California*, 403 U.S. 15, 26 (1971); *Tanner v. Ziegenhorn*, No. 4:17-cv-780-DPM, 2021 U.S. Dist. LEXIS 187782 (E.D. Ark. 2021); *Attwood v. Clemons*, 526 F. Supp. 3d 1152, 1173 n.5 (N.D. Fla. 2021). The First Amendment protects speech that is sharp, critical, or distasteful. It does not permit a public official to exclude speakers from an otherwise open forum simply because their expression is disagreeable.

Here, Plaintiff engaged in core political speech criticizing Defendant's official statements. His response was a sarcastic political critique of Defendant's dehumanizing rhetoric toward Muslims and Palestinians. Shortly thereafter, Defendant blocked him. The timing and context make clear that the block was a response to Plaintiff's articulated viewpoint. Defendant's decision to hide Plaintiff's reply reinforces that inference. Rather than applying a neutral rule, Defendant ensured that Plaintiff's criticism would not be visible within the discussion thread. Defendant did not enforce a neutral rule of conduct, limit participation based on geography, or moderate a specific comment. He imposed a categorical exclusion from the forum.

16

Defendant cannot justify the block by pointing to Plaintiff's status as a non-constituent. None of the social media blocking cases condition First Amendment protection on residency or voter status. *See Lindke,* 601 U.S. 187; *Attwood,* 818 F. App'x at 866; *Bear,* 2023 U.S. Dist. LEXIS 50924, at *19. Moreover, Defendant is a Member of Congress whose legislative actions—including the so-called "Protecting Puppies from Sharia Act"—would affect Americans nationwide, not merely residents of his district. His official communications therefore concern matters of national governance and invite engagement from the broader public.

## II.   PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION, AND THE BALANCE OF EQUITIES AND PUBLIC INTEREST WEIGH HEAVILY IN PLAINTIFF'S FAVOR

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373. In the Eleventh Circuit, once a plaintiff demonstrates a substantial likelihood of success on a First Amendment claim, he is presumed to have fulfilled the other three factors. *Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020); *FF Cosmetics*, 866 F.3d at 1298. As the Eleventh Circuit has emphasized, "even a temporary infringement of First Amendment rights constitutes a serious and substantial injury," and the government has "no legitimate interest in enforcing an unconstitutional" restriction. *KH Outdoor,* 458 F.3d at 1272.

The balance of equities and public interest strongly favor injunctive relief. Defendant suffers no harm that courts recognize as legitimate from permitting

dissenting viewpoints in a forum he voluntarily opened for public engagement, while Plaintiff continues to endure an ongoing deprivation of his First Amendment rights. As the Eleventh Circuit has made clear, the government has "no legitimate interest in enforcing an unconstitutional" policy. *KH Outdoor*, 458 F.3d at 1272. Allowing viewpoint-based exclusions in official social media forums would permit elected officials to curate public discourse by amplifying supportive speech and silencing critics, distorting debate and undermining democratic accountability. Preliminary relief preserves the integrity of open government and prevents the normalization of unconstitutional censorship while this case proceeds.

### III.   NO IMMUNITY DEFENSE BARS PROSPECTIVE RELIEF

#### A.  Sovereign Immunity Does Not Bar Prospective Relief

To the extent Defendant invokes sovereign immunity, that defense is unavailing. The Eleventh Amendment generally bars suits against a state or state officials in their official capacities. U.S. Const. amend. XI; *see Hans v. Louisiana*, 134 U.S. 1, 10–15 (1890). However, under the doctrine of *Ex parte Young*, a suit alleging an ongoing violation of federal law and seeking prospective injunctive relief against a government actor in his official capacity is not barred. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (explaining that courts must determine whether the complaint alleges an ongoing violation of federal law and seeks prospective relief); *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) (same).

18

The Eleventh Circuit has applied *Ex parte Young* in the social media context, holding that a legislator who blocked a critic from his social media account was not shielded by sovereign immunity where the plaintiff sought prospective relief requiring the official to unblock him. *See Attwood*, 818 F. App'x at 867–68. Plaintiff likewise alleges an ongoing First Amendment violation and seeks prospective relief requiring Defendant to lift the block. Sovereign immunity therefore does not bar this action.

### B. *Legislative Immunity Does Not Apply*

Members of Congress are protected by the Speech and Debate Clause only for acts within the sphere of legitimate legislative activity. U.S. Const. art. I, § 6, cl. 1; *Gravel v. United States*, 408 U.S. 606, 616–17 (1972) (limiting immunity to acts integral to the legislative process). The protection turns on the nature of the act, not the status of the actor. *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992) (explaining that legislative immunity depends on the character of the conduct at issue).

Public communications, press releases, and newsletters are not legislative acts entitled to Speech or Debate protection. *Hutchinson v. Proxmire*, 443 U.S. 111, 133 (1979) (holding that newsletters and press releases fall outside the Clause). The Eleventh Circuit has likewise recognized that operating a public-facing social media account is not "an integral part of the deliberative and communicative processes" of Congress. *Attwood*, 818 F. App'x at 869–70 (quoting *Gravel*, 408 U.S. at 625). Defendant's decision to block Plaintiff from a public social media forum is not a

legislative act. It is an administrative and communicative action taken in a public-facing forum. Legislative immunity therefore does not apply.

## **CONCLUSION**

For the reasons set forth above, the Court should immediately enjoin Defendant from continuing to block Plaintiff from Defendant's Official X Accounts based on viewpoint and order Defendant to unblock Plaintiff.

Respectfully submitted,

/s/ *Malak Afaneh*
Staff Attorney
mafaneh@adc.org
(*pro hac vice forthcoming*)

/s/ *Jenin Younes*
National Legal Director
jyounes@adc.org
(*pro hac vice forthcoming*)

AMERICAN-ARAB
ANTI-DISCRIMINATION
COMMITTEE
910 17th Street Northwest,
Suite 1000
Washington, D.C. 20006
Telephone: (202) 244-2990

/s/ *Hassan Shibly*
MUSLIM LEGAL
Florida Bar # 94314
10730 N. 56th Street, Suite 208
Tampa, Florida 33617
hassan@shiblylaw.com

legal@shiblylaw.com
Telephone: (786) 772-4786

*Attorneys for Plaintiff*