# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

AMJAD MASAD,

        *Plaintiff,*

    v.

RANDALL FINE,

        *Defendant.*

Case No.
6:26-cv-00442-ACC-RMN

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendant the Honorable Randall Fine, U.S. Representative for the 6th Congressional District of Florida, hereby files his response to Plaintiff Amjad Masad's Motion for Preliminary Injunction, ECF 10, supported by the below memorandum of law.

## MEMORANDUM OF LAW

### I.    Introduction

Plaintiff's request for a preliminary injunction suffers from three separate and equally fatal flaws: (1) Plaintiff is no longer blocked from interacting with Defendant's @repfine X account; (2) Defendant is a federal official, not a state official; and (3) Plaintiff has failed to plead facts capable of showing that

Defendant possesses actual authority to speak on behalf of the House of Representatives through his X account.

*First*, because Representative Fine has unblocked Plaintiff from his X account, he cannot show either the ongoing or imminent irreparable harm necessary to warrant extraordinary preliminary relief. Put simply, no restrictions impede Plaintiff's ability to interact with Representative Fine's X account.

*Second*, because Representative Fine is a federal official, not a state official, Plaintiff's complaint cannot succeed on the merits. While Plaintiff brings a claim under 42 U.S.C. § 1983, that cause of action is directed at *state* rather than federal officials. Thus, Plaintiff's claim fails out of the gate.

*Third*, Plaintiff also cannot demonstrate a likelihood of success on the merits for an independent reason. Although Plaintiff relies heavily on the Supreme Court's test in *Lindke v. Freed*, 601 U.S. 187 (2024) to argue that Representative Fine exercised "state" action in blocking Plaintiff, he fails to plead facts showing that Representative Fine possesses actual authority to speak on behalf of the House of Representatives through his X account, a necessary part of that test. Thus, like the other post-*Lindke* cases Defendant has identified with claims involving individual legislators' social media accounts, Plaintiff's complaint is hopelessly defective.

In sum, while Plaintiff bears the burden of satisfying all four factors of the standard for obtaining preliminary injunctive relief, he cannot meet either of the first two factors (the most important ones) for these basic reasons. Accordingly, the Court should deny his motion for preliminary injunction.

## II.    Background

The Honorable Randall Fine represents the 6th Congressional District of Florida in the U.S. House of Representatives. In that role, he operates an X (formerly Twitter) account with the handle @repfine and the name "Congressman Randy Fine." Fine Decl. ¶ 3. That is the only account at issue here.[1]

On February 15, 2026, Representative Fine blocked Plaintiff's X account (@amasad) from his @repfine account. *See* Fine Decl. ¶ 5. On February 25, Plaintiff filed the instant lawsuit challenging that blocking. ECF 1. To Representative Fine's knowledge, Plaintiff did not reach out to Defendant or his congressional office to request to be unblocked or attempt to resolve this matter before resorting to a lawsuit. Fine Decl. ¶ 6. Then, on March 3, Plaintiff filed a motion for preliminary injunction asking this Court to "enjoin Defendant from

---

[1] Plaintiff references another X account, with the handle @voterandyfine, in his complaint and motion. *See* ECF 1 at ¶ 10; ECF 10 at 3-4. But Plaintiff's allegations only include facts regarding Plaintiff being blocked from the @repfine X account, *see, e.g.*, ECF 10 at 8-9; ECF 10-1 ¶¶ 20-22; ECF 1 ¶¶ 1-4, 19-23, meaning the @voterandyfine account, which is Defendant's personal campaign account on X, is not relevant to this action. In any event, Plaintiff is not blocked from Defendant's @voterandyfine account. *See* Fine Decl. ¶ 8.

continuing to block Plaintiff" from the @repfine account,[2] and "order Defendant to unblock Plaintiff." ECF 10 at 20. Representative Fine was served with the complaint on March 16. ECF 24, 25.

The Court then granted Defendant's requests for extension of time to respond to Plaintiff's motion for preliminary injunction, ECF 27, 32, as the parties unsuccessfully engaged in efforts to resolve this litigation. On April 13, 2026, Representative Fine unblocked Plaintiff's account. Fine Decl. ¶ 7. This has fully restored Plaintiff's ability to interact with the @repfine account. *See id.* Now that he is unblocked, Plaintiff is again able to follow the @repfine account, and engage with its posts, including by liking, replying, and reposting, and by participating in discussion threads related to those posts. *See Blocking on X*, X Help Center, https://help.x.com/en/using-x/blocking-and-unblocking-accounts; *cf.* ECF 10 at 8 ("As a result of the block, Plaintiff is … unable to reply to Defendant's posts, repost Defendant's posts, participate in discussion threads beneath Defendant's statements, and otherwise engage with other users in the interactive space Defendant created.").

Defendant now files this response in opposition to Plaintiff's motion.

---

[2] In some parts of his motion, Plaintiff asks the Court to enjoin Representative Fine from continuing to block Plaintiff from "Defendant's Official X Account," ECF 10 at ii, while at other times Plaintiff requests that same relief regarding Defendant's "Official X Accounts," *id.* at 3, 20, which he defines to include both the @repfine and @voterandyfine accounts, *id.* at 3. But as noted above, Plaintiff only includes specific facts alleging that Plaintiff was blocked from the @repfine account, not the @voterandyfine account. *See supra* at 3 n.1.

### III.   Legal Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1290-91 (11th Cir. 2022) (same).

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant [has] clearly established the 'burden of persuasion'" as to *each* of these four prerequisites. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (citations omitted); *see also Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and plaintiff must clearly carry the burden of persuasion).

### IV.   Argument

Plaintiff's motion fails under each of the first two preliminary-injunction factors.

First, because Representative Fine has unblocked Plaintiff, Fine Decl. ¶ 7, Plaintiff cannot show any ongoing or imminent irreparable harm. Indeed, Plaintiff has already received the relief sought in his motion. He has been "unblock[ed],"

and Representative Fine is not "continuing to block" him.  ECF 10 at 20.  Any harm he alleges has ceased.

Next, Plaintiff cannot succeed on the merits because he attempts to bring his claim under 42 U.S.C. § 1983, an inappropriate vehicle to sue a federal official like Representative Fine.  Moreover, Plaintiff cannot succeed on his claim because Plaintiff has not pled sufficient facts to demonstrate that Representative Fine, as an individual Member of the House of Representatives, either is authorized to speak on behalf of House when operating his @repfine X account or purported to exercise that authority.  *See Lindke v. Freed*, 601 U.S. 187, 200-01 (2024).  Notably, while Plaintiff's argument heavily relies on the Supreme Court's decision in *Lindke*, *see, e.g.*, ECF 10 at 12-13, he entirely ignores a string of post-*Lindke* decisions by lower courts applying *Lindke* and rejecting similar claims brought against individual legislators.

Without either establishing irreparable harm or likelihood of success on the merits, Plaintiff's motion for preliminary injunction necessarily fails.  *See ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) ("Failure to show any of the four factors is fatal.").

6

**A.    Plaintiff cannot demonstrate ongoing or imminent irreparable harm**

Representative Fine has unblocked Plaintiff and restored in full his ability to interact with the @repfine account.  Fine Decl. ¶ 7.[3]  This is the relief Plaintiff seeks in his motion for preliminary injunction.  *See* ECF 10 at 20 (asking the Court to "immediately enjoin Defendant from continuing to block Plaintiff from Defendant's Official X Accounts . . . and order Defendant to unblock Plaintiff").  His alleged injury is now in the past, *cf.* ECF 10-1 at ¶¶ 20-21 (describing alleged harms before Plaintiff was unblocked), with no likelihood of imminently resuming.  As a result, Plaintiff cannot show either the ongoing irreparable harm or the substantial prospect of imminent future injury necessary to obtain a preliminary injunction.

Irreparable harm is "the sine qua non of injunctive relief."  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (per curiam) (citations omitted); *see also id.* (stating that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper"); *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 574 (5th Cir. 1974) (stating that "where no irreparable injury is alleged and proved, denial of a preliminary injunction is appropriate").

---

[3] Representative Fine's unblocking of Plaintiff is not a concession that the blocking of Plaintiff was unlawful.  *See infra* Section IV.B.  Rather, Representative Fine took this action because he believes that this dispute is entirely unnecessary, a waste of time and resources for all involved, and a distraction from his efforts to represent his constituents.

As the Eleventh Circuit has repeatedly emphasized, "the asserted irreparable injury 'must be neither remote nor speculative, but actual *and* imminent.'" *Siegel*, 234 F.3d at 1176 (emphasis added) (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). This is a high bar. "Conjecture" and "conclusory allegation[s] of 'irreparable harm'" are inadequate. *City of Jacksonville*, 896 F.2d at 1286. Plaintiff "must actually show based on the facts of this case that irreparable harm [is] 'likely,' not merely possible, in the absence of an injunction." *Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x 981, 985 (11th Cir. 2016) (per curiam) (quoting *Winter,* 555 U.S. at 20-22).

Importantly, "an injunction is limited to prospective relief." *Alabama v. U.C. Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir. 2005) (citing *Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965)). Therefore, Plaintiff "must [] go beyond the mere fact of past violations and offer 'positive proof' of the likelihood of further violations in the future." *SEC v. Warner*, 674 F. Supp. 841, 844 (S.D. Fla. 1987) (quoting *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978)). Alleged harm that has already occurred "is neither imminent nor irreparable at law and is not the appropriate subject matter for injunctive relief." *Alabama*, 424 F.3d at 1133.

Furthermore, "[c]onstitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction." *Siegel*, 234 F.3d at 1178 (quoting *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir.1989)).  An assertion of First Amendment rights "does not automatically require a finding of irreparable injury" and entitle a plaintiff to a preliminary injunction. *Id.* (quoting *Hohe*, 868 F.2d at 72-73).  The violation must also be "on-going" or imminent to warrant preliminary injunctive relief. *See id.*  "[F]acts matter in challenges to laws arguably implicating First Amendment rights," and plaintiffs seeking preliminary relief in this context must "be armed with facts demonstrating a *substantial likelihood* that they face an imminent and cognizable injury." *Fla. Decides Healthcare, Inc. v. Byrd*, 785 F. Supp. 3d 1086, 1094 (N.D. Fla. 2025) (emphasis added).

Here, the harm alleged by Plaintiff is not ongoing.  Representative Fine has restored Plaintiff's full access to the @repfine account, meaning Plaintiff can interact with the account exactly as he could before he was blocked. *Cf.* ECF 10 at ii (describing the blocking itself as Plaintiff's "ongoing constitutional injury"); *id.* at 3 (describing Plaintiff's irreparable harm as being "unable to participate in real-time political discourse" on the @repfine account).  Plaintiff is once again able to reply to Representative Fine's posts, repost those posts, comment, participate in discussion threads beneath Representative Fine's statements, and fully engage with

9

other users on the official page, as he was before. *Cf.* ECF 10-1 at ¶¶ 20-21 (describing alleged harms before Plaintiff was unblocked). Accordingly, any alleged harm ended with Representative Fine's unblocking of Plaintiff. Indeed, Plaintiff has already received the relief that he is seeking in his motion for preliminary injunction: Representative Fine is not "continuing to block" Plaintiff, and Plaintiff has been "unblock[ed]." ECF 10 at 20. For these reasons, Plaintiff cannot "point to specific facts demonstrating" an ongoing or imminent threat of harm, meaning preliminary injunctive relief is precluded. *Fla. Decides Healthcare*, 785 F. Supp. 3d at 1095.[4]

In assessing whether preliminary relief is warranted, courts ask whether "it is necessary to alter the [existing] situation so as to prevent [irreparable] injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." *Callaway*, 489 F.2d at 576 (citations omitted). Here, there is no need to alter the existing situation

---

[4] The case law Plaintiff cites in support of his irreparable injury argument, *see* ECF 10 at 17, is inapposite because those cases concern alleged First Amendment violations that were ongoing. *See Elrod v. Burns*, 427 U.S. 347, 373-7 (1976) (plurality opinion) (finding ongoing and imminently threatened injury from First Amendment violations where public employees had agreed to provide support for the Democratic Party in order to avoid discharge or were threatened with job loss due to their political affiliation); *Otto v. City of Boca Raton*, 981 F.3d 854, 860, 870 (11th Cir. 2020) (plaintiffs sued to enjoin enforcement of local ordinances that the Eleventh Circuit found violated their First Amendment rights); *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1294-97, 1298 (11th Cir. 2017) (plaintiffs sued to enjoin and invalidate local ordinances on First Amendment grounds).

because Representative Fine has already returned Plaintiff back entirely to the last uncontested status quo—the very purpose of a preliminary injunction. *See Lackey v. Stinnie*, 604 U.S. 192, 200 (2025). As Plaintiff himself acknowledges, unblocking is all that he needs to resume participation on the @repfine account. *See* ECF 10-1 ¶ 21 ("I would comment again if unblocked.").[5]

Furthermore, Plaintiff cannot demonstrate an imminent threat of future irreparable harm. To the extent that Plaintiff attempts to argue that he could be blocked again during this litigation, that hypothetical is speculative and insufficient to justify injunctive relief. *See, e.g.*, *Ruffin v. Great Dane Trailers*, 969 F.2d 989, 995 (11th Cir. 1992) (injunction is inappropriate if possibility of future harm arising from the behavior plaintiff seeks to enjoin is purely speculative); *Sunshine State Reg'l Ctr., Inc. v. Jaddou*, No. 23-CV-60795, 2023 WL 3712916, at *15 & n.9 (S.D. Fla. May 25, 2023) (holding that a "possibility" that "irreparable harm looms in the indefinite future is insufficient to support a preliminary injunction"), *report and recommendation adopted*, No. 23-60795-CIV, 2023 WL 3721710 (S.D. Fla. May 30, 2023).

---

[5] These facts contrast starkly with the irreparable harm that was recently found in *Damsky v. Summerlin*, where a plaintiff student suffered ongoing irreparable harm because he was expelled based on posts made on his personal X account. 810 F. Supp. 3d 1258, 1263-66 (N.D. Fla. 2025). There, the court found that this loss of free speech rights caused irreparable harm that continued every day that he could not attend school. *Id.* at 1273. By contrast, Plaintiff here faces no ongoing consequence; all prior restrictions on his X activity have been removed. Fine Decl. ¶ 7.

11

Similarly, any attempt by Plaintiff to argue that "the mere discontinuance of [alleged] infringing conduct does not render injunctive relief inappropriate" because "the past violations" create "a cognizable danger of future violations," *Clayton v. Howard Johnson Franchise Sys., Inc.*, 730 F. Supp. 1553, 1558 (M.D. Fla. 1988) (citations omitted), would also fall short. Courts in this district have recognized that "[w]hen a *government* voluntarily ceases the challenged action, … there is a presumption that the government will not later resume the action, so the plaintiff bears the burden of showing that there is a reasonable expectation that the government will reverse course… ." *Parnell v. Sch. Bd. of Lake Cnty., Fla.*, 685 F. Supp. 3d 1339, 1351 (M.D. Fla. 2023) (citation omitted)). Representative Fine, as a sitting Member of Congress, is entitled to this presumption, and mere speculation by Plaintiff would not be enough to override it.

Issuing a preliminary injunction "based only on a *possibility* of irreparable harm" would be "inconsistent" with treating a preliminary injunction as an "extraordinary remedy." *See Winter*, 555 U.S. at 22 (emphasis added). Plaintiff cannot point to any policy, threat from Representative Fine, or statement of future intent to target his speech supporting a fear of imminent re-blocking, because there is none.[6] Accordingly, Plaintiff "has failed to offer the 'positive proof' of the

---

[6] As a practical matter, even if Representative Fine decided to reverse course during the pendency of this litigation, Plaintiff would not be without recourse. In that circumstance, the remedy would be straightforward: Plaintiff could immediately seek a temporary restraining

(*Continued . . . .*)

12

likelihood of future violations" required for preliminary relief. *Warner*, 674 F. Supp. at 844 (citation omitted).[7]

In sum, Plaintiff is neither suffering ongoing harm nor facing the likelihood of imminent harm. As a result, he cannot establish the irreparable harm necessary to warrant a preliminary injunction, and his motion can be denied on that basis alone.

### B. Plaintiff is unlikely to succeed on the merits

Plaintiff also cannot satisfy the first factor required for a preliminary injunction; he cannot demonstrate that his complaint is likely to succeed on the

---

order. This also demonstrates why this extraordinary remedy, particularly against a sitting Member of Congress, is not warranted at this stage.

[7] First Amendment cases in Florida federal district courts finding a threat of irreparable harm even after the alleged violations ceased are readily distinguishable. For example, in *S.D. v. St. Johns County School District*, the Court found a substantial threat of irreparable harm even though the school district had already removed an allegedly unconstitutional song from an upcoming school assembly program, because it was "entirely possible that the school district, in response to political pressures by parents and concerned citizens, could decide to reinstate the Song's performance." 632 F. Supp. 2d 1085, 1096 (M.D. Fla. 2009). But here, Plaintiff makes no similar allegation that there is an upcoming event (like a scheduled assembly) that makes the threat of harm imminent, or that outside parties or other influences are exerting pressure on Representative Fine to block Plaintiff's account again that would raise a cognizable likelihood of imminent future harm.

Likewise, in *Lutrario v. City of Hollywood*, 683 F. Supp. 3d 1361, 1371 (S.D. Fla. 2023), that court held that the plaintiff's claims were not rendered moot by a city attorney's letter to a police department asking it to cease enforcement of challenged ordinances and by a declaration that the city attorney's office had begun drafting legislation to repeal ordinances. But unlike in *Lutrario*, where the plaintiff's speech was being chilled by the fear of enforcement because the ordinances remained in effect (notwithstanding the city attorney's request to cease enforcement), *see id.*, here the challenged action has ceased entirely. Accordingly, these facts differ materially from an ordinance or statute that remains in effect (with repeal pending) because Plaintiff has been entirely unblocked and his ability to engage has been fully and unambiguously restored.

merits. *Winter*, 555 U.S. at 20.  The Court can deny Plaintiff's motion solely for this reason as well.  *Upside Foods Inc. v. Comm'r, Fla. Dep't of Agric. & Consumer Servs.*, No. 24-13640, 2026 WL 797121, at *4 (11th Cir. March 23, 2026) ("If a plaintiff does not demonstrate a substantial likelihood of success on the merits, we need not address the remaining preliminary injunction requirements.").

As an initial matter, Plaintiff is attempting to bring a First Amendment challenge to Representative Fine's conduct under 42 U.S.C. § 1983—the only cause of action he identifies for his sole claim in the complaint.  *See, e.g.*, ECF 10 at 11; ECF 1-1 at 1 of 2 (listing sole cause of action as "42 USC 1983"); ECF 1 at ¶ 5.[8]  But that statute is not directed at federal officials, *see, e.g.*, *Dixon v. Clyburn*, No. 23-CV-04500, 2025 WL 354416, at *3 (D.S.C. Jan. 31, 2025), so his complaint is destined to fail.

"To prevail on a claim under § 1983, a plaintiff must demonstrate both (1) that the defendant deprived h[im] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law."

---

[8] Furthermore, Plaintiff's complaint requests attorney fees under 42 U.S.C. § 1988.  ECF 1 at 10.  Such fees are only available in Section 1983 cases or cases involving other federal civil rights statutes not applicable here.  *See N. Carolina Dep't of Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 15 (1986) ("[O]nly a court in an action to enforce one of the civil rights laws listed in § 1988 may award attorney's fees" under that statute).  Seeking attorney fees under Section 1988 for the sole claim in his case (First Amendment violation) only makes sense if he is bringing that claim under Section 1983.

14

*Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998).  But even if Plaintiff could show here that Representative Fine "deprived h[im] of a right secured under the Constitution or federal law," he cannot show that "such a deprivation occurred under color of state law."  *Id.*  It is self-evident that Representative Fine is not a *state* official acting under color of state law.  Rather, he is a federal elected official.

As the United States District Court for the District of South Carolina noted in recently dismissing a similar Section 1983 claim filed against Representative James Clyburn related to his X account, "[Plaintiff] asserts Clyburn acted in his official capacity as a United States Congressman. [Plaintiff] has thus not alleged his rights were violated by a person acting under color of state law, and, for this reason, his claim against Clyburn fails."  *Clyburn*, 2025 WL 354416, at *3 (citation omitted).  So too here, and this defect alone requires denial of the motion for preliminary injunction because Plaintiff cannot possibly succeed on the merits of his claim as pled.  *See, e.g.*, *Paisey v. Vitale*, 807 F.2d 889, 894-95 (11th Cir. 1986) (affirming denial of preliminary injunction where plaintiff failed to state a claim for relief cognizable under Section 1983, because he failed to show the deprivation was caused by the defendant while acting under color of state law).

Plaintiff's claim suffers from another fatal flaw as well.  To establish that a "public official's social-media activity may be attributable to the state—otherwise known as state action," Plaintiff relies on the test set forth by the Supreme Court in

15

*Lindke v. Freed.* ECF 10 at 11. There, the Court held that a public official's social media activity *only* constitutes state action if the official "(1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when he spoke on social media." *Lindke*, 601 U.S. at 198.

While Plaintiff characterizes *Lindke* as helpful to his case, *see* ECF 10 at 12-13,[9] he neglects to mention that several district courts have since found that the social media activity of individual state legislators and Members of Congress, including blocking access to X accounts, fails the *Lindke* test at both the first and second prongs. *See, e.g.*, *Clyburn*, 2025 WL 354416, at *4 ("[Plaintiff's] amended complaint lacks facts showing [U.S. Representative] Clyburn exercised actual authority to speak on behalf of the Legislature—or the state—when using his [official and unofficial] Twitter accounts."); *Detiege v. Jackson*, No. 23-CV-175, 2025 WL 2380730, at *7-8 (W.D. La. Aug. 15, 2025) (state legislator's social media activity not conducted on behalf of the state); *Fox v. Faison*, 798 F. Supp. 3d 809, 821-23 (M.D. Tenn. Aug. 19, 2025) (holding individual state legislators did not possess actual authority to speak on behalf of the state through use of social media); *Freeman v. Epps*, No. 24-CV-01215, 2025 WL 2948598, at *7-8 (D. Co. Sept. 19, 2025) (concluding that social media activity of legislators is not state

---

[9] *See also* ECF 10 at 2 ("Under controlling Supreme Court precedent, a public official's social-media account constitutes a public forum for First Amendment purposes if the official possesses actual authority to speak on the government's behalf and exercises that authority in the forum in question. *See Lindke*, 601 U.S. 187.").

action because "they do not possess 'actual authority' to speak on behalf of the state" and denying plaintiff's request for preliminary injunction allowing him to view Colorado state representative's X account posts); *Devore v. McCombie*, No. 25-CV-00323, 2025 WL 2696304, at *4-5 (N.D. Ill. Sept. 22, 2025) (holding state legislator did not possess actual authority to speak on behalf of the state on social media page, and did not purport to exercise that authority when making specific social media posts).

The same is true here. Plaintiff does not plead facts sufficient to show that Representative Fine possesses the actual authority to speak on behalf of the entire U.S. House of Representatives or federal government through his X account. For example, Plaintiff points to no law, rule, or policy granting him such authority. Nor does the complaint plead facts sufficient to show that Representative Fine purported to be exercising the authority to speak on behalf of the U.S. House of Representatives or the federal government when he blocked Plaintiff on his @repfine social media account.

Notably, Plaintiff does not point to a single post-*Lindke* case where an individual legislator's social media activity has been successfully challenged on state action or First Amendment grounds. *Cf. Freeman*, 2025 WL 2948598, at *6 ("[M]ost, if not all, courts considering this question have concluded legislators—as opposed to executive branch members—individually lack 'actual authority to

17

speak on the State's behalf,' and thus, their social media activity is not conducted under color of law." (quoting *Lindke*, 601 U.S. at 198)).

To be sure, Plaintiff relies on *Attwood v. Clemons*, 818 F. App'x 863 (11th Cir. 2020), an unpublished, non-binding case, to suggest that individual state legislators who block on official social media accounts act under color of state law under 42 U.S.C. § 1983.  *See* ECF 10 at 11.  But *Attwood* was decided *before* the Supreme Court in *Lindke* established the governing test for social media cases involving state actors, and every post-*Lindke* case that Defendant has identified relying on the Supreme Court's guidance has come out the other way on this question.  *See supra* at 16-17.  Furthermore, as discussed *supra* at 15, Representative Fine is a Member of Congress, not a state official, so the court's decision in *Clyburn* is more on point than *Attwood*.  *See Clyburn*, 2025 WL 354416, at *3-4.

In short, for these two separate threshold reasons, Plaintiff has no likelihood of success on the merits of the claim he has pled here, so his motion for preliminary injunction can be rejected for that reason alone.[10]

* * *

---

[10]  Representative Fine does not concede any arguments and expressly reserves the right to raise additional arguments on the merits in future pleadings.  The fundamental defects in the complaint identified here are more than sufficient to show that Plaintiff is not likely to succeed on the merits.

Absent any demonstrated ongoing or imminent irreparable harm or a showing of likelihood of success on the merits, this Court need not address the remaining preliminary injunction factors. *See Upside Foods Inc.*, 2026 WL 797121, at \*4; *Siegel*, 234 F.3d at 1175-76.

## V.    Conclusion

For the foregoing reasons, the Court should deny Plaintiff's Motion for Preliminary Injunction.

Respectfully submitted,

*/s/ Matthew B. Berry*
MATTHEW B. BERRY (VA Bar No. 42600)
  *General Counsel*
TODD B. TATELMAN (VA Bar No. 66008)
  *Deputy General Counsel*
KENNETH C. DAINES (DC Bar No. 1600753)
  *Assistant General Counsel*
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
Matthew.Berry@mail.house.gov

April 20, 2026

*Counsel for Defendant the Honorable Randall Fine*

19

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2026, I caused the foregoing document to be filed via this Court's CM/ECF system, which I understand caused service on all registered parties.

*/s/ Matthew B. Berry*
Counsel of Record