**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

AMJAD MASAD,

        **Plaintiff,**

  **v.**

                       **Case No.: 6:26-cv-442-ACC-RMN**

RANDALL FINE,

        **Defendant.**

---

**ORDER**

This cause comes before the Court on Defendant Randall Fine's ("Defendant") Motion to Dismiss. (Doc. 42). Plaintiff Amjad Masad ("Plaintiff") has responded in opposition. (Doc. 46). Defendant's Motion is ripe for review. For the reasons set forth below, Defendant's Motion will be granted.

## I.    BACKGROUND

This dispute arises from Defendant, a Member of the United States House of Representatives representing Florida's Sixth Congressional District, allegedly blocking Plaintiff from his X (formerly known as "Twitter") account[1] based on Plaintiff's viewpoint. (Doc. 1 ¶¶ 1, 21–23). The name of Defendant's X Account is "Congressman Randy Fine" and the account description is "Husband and father proudly serving Florida's 6th Congressional District. Pronouns: Hebrew/Hammer."

---

[1] Defendant has at least two X accounts: @repfine and @voterandyfine. (Doc. 1 ¶ 10). Only the @repfine account (the "X Account") is relevant to this action.

(*Id.* ¶ 14). Plaintiff alleges that Defendant uses his account "to communicate legislative activity, governmental services, constituent issues, and official events, by announcing positions and actions and engaging the public on governmental affairs." (*Id.* ¶ 11). Plaintiff also alleges that he is a "Muslim immigrant from Jordan[.]" (*Id.* ¶ 8). According to Plaintiff, Defendant harbors "hostility" and "animus" toward Muslims, Arabs, and Palestinians, which Plaintiff alleges is evident in Defendant's prior posts on X. (*Id.* ¶ 20).

On February 15, 2026, in response to another X user's post, Defendant allegedly posted: "If they force us to choose, the choice between dogs and Muslims is not a difficult one." (*Id.* ¶ 17–19). In response to Defendant's post, Plaintiff commented: "Are you talking about what's for lunch?" (*Id.* ¶ 21). According to Plaintiff, his reply "constituted constitutionally protected expression criticizing Defendant's statements as a public official." (*Id.* ¶ 22). Plaintiff alleges that "[s]hortly thereafter, Defendant blocked Plaintiff from accessing the account by using X's 'block feature,' which prevents those affected individuals from further interacting with the account in question." (*Id.* ¶ 23).

On February 25, 2026, Plaintiff filed a Complaint asserting a First Amendment claim of viewpoint discrimination against Defendant under 28 U.S.C. § 1983. (*Id.* at 2, 8). Plaintiff seeks declaratory and injunctive relief. (*Id.* at 10). On March 3, 2026, Plaintiff moved for a preliminary injunction "enjoin[ing] Defendant from continuing to block Plaintiff" from his X Account. (Doc. 10 at 27). The Court

held a hearing on Plaintiff's Motion on April 21, 2026. (Doc. 38). On May 15, 2026, Defendant filed a Motion to Dismiss Plaintiff's Complaint, to which Plaintiff responded in opposition on June 5, 2026. (Doc. 42; Doc. 46).

## II.    LEGAL STANDARDS

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. CONST. art. III, § 2. At the heart of the constitutional requirement for a live case or controversy are three justiciability doctrines—standing, ripeness, and mootness. *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011). Each of these doctrines may be invoked as an attack on the Court's subject matter jurisdiction pursuant to Rule 12(b)(1). *Bd. of Cnty. Comm'rs*, No. 8:03-cv-904-T-23TBM, 2007 WL 2669210, at *6 (M.D. Fla. Sept. 6, 2007); *Doe v. Pryor*, 344 F.3d 1282, 1284 (11th Cir. 2003).

Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms: facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). For facial attacks, the Court accepts the complaint's allegations as true. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys. Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Factual attacks, in contrast, allow a court to "consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). When a factual attack is made, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from

evaluating for itself the merits of jurisdictional claims." *Lawrence*, 919 F.2d at 1528–29. That said, "it is extremely difficult to dismiss a claim for lack of subject matter jurisdiction." *Simanonok v. Simanonok*, 787 F.2d 1517, 1519 (11th Cir. 1986).

For purposes of deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, the plaintiff's complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.    ANALYSIS

Defendant argues that Plaintiff's Complaint must be dismissed as moot and for failure to state a claim. (Doc. 42 at 1). The Court addresses each argument in turn.

### A. Mootness

Defendant argues that "this case is moot because Plaintiff is no longer blocked from interacting with Defendant's @repfine X account." (*Id.* at 2). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability

to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (citing *Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam)). "[D]ismissal is required because mootness is jurisdictional." *Id.* (citations omitted). However, "[n]one of this implies that a defendant may 'automatically moot a case' by the simple expedient of suspending [his] challenged conduct after [he] is sued." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) (citation omitted). "[A] federal court's constitutional authority cannot be so readily manipulated." *Id.*

Under the voluntary cessation doctrine, a defendant who claims his voluntary cessation of his challenged conduct moots a case must "show that the practice cannot 'reasonably be expected to recur.'" *Id.* (citations omitted). The typical concern is that "a defendant might willingly change [his] behavior in the hope of avoiding a lawsuit but then, having done so, 'return to [his] old ways.'" *Keohane v. Fla. Dept. of Corrections Secretary*, 952 F.3d 1257, 1267 (11th Cir. 2020) (citation omitted). Thus, the Supreme Court describes the defendant's burden to prove that there is no reasonable expectation that he will return to his old ways as a "formidable burden." *Fikre*, 601 U.S. at 241 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). This applies "for governmental defendants no less than for private ones." *Id.*; *see also Doe v. Wooten*, 747 F.3d 1317, 1322 (11th Cir. 2014) ("In keeping with these Supreme Court decisions, this Court also employs this standard, even for government actors.") (citation omitted).

In the Eleventh Circuit, courts give government actors "more leeway than private parties in the presumption that they are unlikely to resume illegal activities" because of the "unique characteristics of public defendants[.]" *Wooten*, 747 F.3d at 1322 (citations omitted). The reasoning behind this "leeway" or "rebuttable presumption" is that "government actors are more likely than private defendants 'to honor a professed commitment to changed ways.'" *Keohane*, 952 F.3d at 1268 (citations omitted). "[O]nce a government actor establishes unambiguous termination of the challenged conduct, the controversy 'will be moot in the absence of some reasonable basis[2] to believe that the policy will be reinstated if the suit is terminated.'" *Wooten*, 747 F.3d at 1323.

Here, Defendant is a governmental official who terminated his challenged conduct by unblocking Plaintiff. (Doc. 42-1 ¶¶ 2, 7). Plaintiff's argument that the timing of Defendant's termination of his challenged conduct alone creates ambiguity is not persuasive. (Doc. 46 at 10). Plaintiff relies on *Rich v. Secretary, Florida Department of Corrections*, where the Eleventh Circuit concluded that the defendant had not unambiguously terminated its challenged policy based on its timing and the fact that it had "never promised not to resume the prior practice." (*Id.*); 716 F.3d 525, 532 (11th Cir. 2013). It is true that Defendant waited until April 13, 2026 to

---

[2] Defendant describes Plaintiff's burden under the rebuttable presumption as demonstrating a "substantial likelihood." (Doc. 42 at 2, 7, 12, 17). But the Eleventh Circuit has clarified that "the correct standard is a 'reasonable basis to believe that the policy will be reinstated if the suit is terminated.'" *Wooten*, 747 F.3d at 1323 (citation omitted).

unblock Plaintiff, did not tell Plaintiff that he was unblocked until the day before the preliminary injunction hearing on April 20, 2026, and did not create his new social media policy until May 11, 2026, four days prior to filing his motion to dismiss for mootness. (Doc. 42-1 ¶¶ 7, 9; Doc. 39 at 6; Doc. 36 at 2; Doc. 42). However, unlike the defendant in *Rich*, Defendant has represented to the Court that he is "committed to implementing [his] social media policy in a viewpoint-neutral manner when moderating future activity on the @repfine account, including with respect to Plaintiff." (Doc. 42-1 ¶ 10); *Rich*, 716 F.3d at 532 (citations omitted). The Court also acknowledges that Defendant was thorough in terminating his alleged viewpoint discrimination by unblocking Plaintiff as well as every blocked account on his X Account. (Doc. 42-1 ¶¶ 7, 11).

Therefore, the Court finds that Defendant unambiguously terminated his challenged conduct, and the rebuttable presumption applies in this case. But, as explained below, the Court also finds that Plaintiff has shown that the totality of the circumstances creates a reasonable basis to believe that Defendant will resume his challenged conduct if this lawsuit is terminated. *See Keohane*, 952 F.3d at 1268.

In evaluating whether a plaintiff has met his burden of showing a reasonable basis to believe that a government defendant will reverse course after a lawsuit is terminated, courts consider three non-exclusive factors:

> (1) "whether the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate our jurisdiction"; (2) whether the decision to end the challenged conduct was "unambiguous"

and can be "fairly viewed as being 'permanent and complete'"; and (3) "whether the government has consistently maintained its commitment to the new policy."

*Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 115 F.4th 1266, 1284–85 (11th Cir. 2024), *cert. denied*, 146 S. Ct. 607, 223 L. Ed. 2d 225 (2025) (citing *Keohane*, 952 F.3d at 1268). Courts are "more likely to find a reasonable expectation of recurrence when the challenged behavior constituted a 'continuing practice' or was otherwise deliberate." *Atheists of Fla., Inc. v. City of Lakeland*, 713 F.3d 577, 594 (11th Cir. 2013) (citations omitted).

First, there is no indication that Defendant's change in conduct resulted from substantial deliberation and this factor clearly weighs in Plaintiff's favor. The timing of Defendant unblocking Plaintiff and creating his social media policy is a clear indication that Defendant was trying to rid himself of this litigation. Further, Defendant has offered no other explanation independent of this litigation which may have motivated his change in conduct. However, the Eleventh Circuit has made it clear that courts should not "overemphasize[]" the timing of a government defendant's change in conduct. *Keohane*, 952 F.3d at 1269. Thus, the Court will not do so here.

Second, although Defendant has unambiguously terminated his challenged conduct by unblocking Plaintiff, there are other relevant considerations that are cause for concern. The social media policy Defendant posted to his Congressional website cannot be fairly viewed as "permanent and complete." As Plaintiff points

out, unlike the Eleventh Circuit cases Defendant relies on, Defendant has implemented "a self-imposed social-media policy adopted after litigation commenced, subject to his sole control to revise, abandon, interpret, and enforce." (Doc. 46 at 9). Put another way, Defendant may reverse course *with the click of a button*.

The Eleventh Circuit cases Defendant relies on are markedly different from these circumstances. *See Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1335 (11th Cir. 2005) (holding a case moot where "Miami completely revised and amended its zoning ordinances, changing entirely the provisions of their code that were the gravamen of [the] suit"); *Keohane*, 952 F.3d at 1267 ("Because the FDC has formally rescinded its freeze-frame policy and replaced it with a new one that properly attends to inmates' individualized medical needs, we hold that [the plaintiff's] challenge to the old policy is moot."); *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1333 (11th Cir. 2004) ("More significantly, here the City promptly amended the Sign Code in response to a single letter from the plaintiff, and, notably, before it had ever been sued."); *Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998) (affirming mootness where an airport's new policy appeared to be "the result of substantial deliberation on the part of airport officials, and the evidence suggest[ed] that it [had] been consistently applied for the past three years"); *Saladin v. City of Milledgeville*, 812 F.2d 687, 693 (11th Cir. 1987) (concluding that the controversy concerning a city's display of a

seal on a water tank, city vehicles, and uniforms was moot where it no longer displayed the seal at those locations); *Atheists of Fla., Inc.*, 713 F.3d at 595 (concluding that whether a city commission's past speaker selection practice was constitutional was moot where the commission "discontinued [it] a few days after it was requested to do so, and months prior to the filing of this action").

Indeed, Defendant would not "have to do [*any*] serious hoop-jumping" to rescind his social media policy. *Keohane*, 952 F.3d at 1269. The Court also finds it significant that when Defendant unblocked Plaintiff on April 13, 2026, he did not inform Plaintiff nor the Court of this fact until seven days later, the day before the injunction hearing was held in this case on April 21, 2026. (Doc. 36; Doc. 39 at 5–6); *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1266–67 (11th Cir. 2010) ("Short of repealing a statute, if a governmental entity decides in a clandestine or irregular manner to cease a challenge behavior, it can hardly be said that its 'termination' of the behavior is unambiguous."). When the Court questioned why Defendant left Plaintiff in the dark as to this key fact, Defendant's counsel responded, "[w]e didn't have an obligation to tell the plaintiff." (Doc. 39 at 6). The credibility of Defendant's commitment to not block Plaintiff based on viewpoint again is undercut by this behavior.

Further, the Eleventh Circuit has explained that both the timing and content of a cessation decision are relevant in evaluating whether a defendant's voluntary cessation is sufficiently unambiguous. *Wooten*, 747 F.3d at 1323. Thus, it is relevant

that Defendant's new social media policy asserts that his X account "is a moderated online discussion site and not an unlimited public forum." (Doc. 42-1 at 5). The Court also notes that Defendant's commitment to not re-blocking Plaintiff based on viewpoint appears incomplete. In both declarations Defendant has filed in this case thus far, Defendant uses passive voice to admit that "[o]n February 15, 2026, the account @amasad was blocked from directly engaging with my @repfine X account." (Doc. 36-1 ¶ 5; Doc. 42-1 ¶ 5). However, Defendant's commitment to moderating activity on his X account in a viewpoint-neutral manner applies to only himself. (Doc. 42-1 ¶ 10) ("I am committed to implementing this social media policy in a viewpoint-neutral manner[.]"); *cf. Pinkhasov v. Vernikov*, No. 1:23-CV-3460, 2024 WL 2188356, at *7 (E.D.N.Y. May 15, 2024) ("[A]ny assurances given by Councilmember Vernikov may ultimately be illusory as her declaration does not actually state who controls the @InnaVernikov Twitter account or is responsible for social media management and blocking.").

Plaintiff does not allege or otherwise show that Defendant has failed to consistently maintain his commitment to his new social media policy as to Plaintiff or anyone else. Thus, this factor weighs in Defendant's favor. However, the significance of this factor is limited by the fact that Defendant created his social media policy as recently as May 11, 2026. (Doc. 42-1 ¶ 9). Plaintiff also points out that Defendant has not "publicly announced the policy through a post on the @RepFine account (though he did link it in his bio, which draws less attention) or

otherwise explained the purported change in moderation practices to the users affected by those practices." (Doc. 46 at 8). Although Defendant posting his social media policy on his X account would have drawn more attention to it, that does not negate the fact that Defendant has publicly committed to his policy by posting it on his official Congressional website. (Doc. 42-1 ¶ 9). As for Plaintiff's argument that Defendant "has never disavowed the constitutionality of excluding Plaintiff based on viewpoint," in keeping with Supreme Court precedent, the Court only considers this fact to the extent that it sheds light on "the potential for [Defendant's] future conduct[.]" (Doc. 46 at 8); *Fikre*, 601 U.S. at 244.

Defendant argues that his alleged conduct is an "isolated incident" rather than a "continuing practice." (Doc. 42 at 17). The Court takes judicial notice of a related case filed in this district, *Baker v. Fine*, Case No. 5:26-cv-00135-JSM-PRL (M.D. Fla. Feb. 20, 2026). (Doc. 46 at 8; Doc. 20 at 1); *Cash Inn of Dade, Inc. v. Metro. Dade Cnty.*, 938 F.2d 1239, 1243 (11th Cir. 1991) ("A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases."). In *Baker*, Aaron Baker accuses Defendant of blocking him from Defendant's X Account in February 2026 for criticizing Defendant's "continuous refusal to support 'The Epstein Files Transparency Act[.]'" Complaint at ¶ 22, *Baker v. Fine*, Case No. 5:26-cv-00135-JSM-PRL (M.D. Fla., Feb. 20, 2026), Doc. 1. The Court is not implying that two instances of alleged conduct amounts to a "continuing practice." However, the *Baker* lawsuit suggests that

Defendant blocking users on X based on viewpoint is not "unintentional" nor an "isolated incident[,]" which is cause for concern. *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) ("[I]t comes as no surprise that courts are more likely to find that the challenged behavior is not reasonably likely to recur where it constituted an isolated incident, was unintentional, or was at least engaged in reluctantly."); *see also Atheists of Fla., Inc.*, 713 F.3d at 594 ("[W]e are more likely to find a reasonable expectation of recurrence when the challenged behavior constituted a 'continuing practice' or was otherwise deliberate.").

Therefore, based on the totality of the circumstances, there is a reasonable basis to believe that Defendant will resume his viewpoint-based blocking of Plaintiff if this action is terminated. Nevertheless, Plaintiff's Complaint will be dismissed for failure to state a claim.

## B. Failure to State a Claim

Plaintiff has failed to plead a cause of action against Defendant. As Defendant points out in his Motion, Plaintiff chose to sue Defendant, a federal official, under 42 U.S.C. § 1983. (Doc. 42 at 18–21). However, "[s]ection 1983 does not apply to federal actors acting under color of federal law." *Hindman v. Healy*, 278 F. App'x 893, 895 (11th Cir. 2008)[3] (citing *District of Columbia v. Carter*, 409 U.S. 418,

---

[3] Unpublished opinions of the Eleventh Circuit constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36-2.

424–25 (1973)); *see also Leonard v. F.B.I.*, 405 F. App'x 386, 387 (11th Cir. 2010) ("Section 1983 applies only to state officials.") (citation omitted).[4]

Plaintiff argues that he stated a claim by citing to 28 U.S.C. § 1331 and 28 U.S.C. § 2201 in his Complaint. (Doc. 46 at 13). But § 1331 merely confers subject matter jurisdiction based on a federal question and § 2201 gives courts authority to grant declaratory relief. (Doc. 1 ¶ 6); *see also Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952) (explaining that § 2201 "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant"). Further, Plaintiff's argument that § 1983 is not a prerequisite to constitutional claims seeking equitable relief from federal actors is beside the point. (Doc. 46 at 13).

Plaintiff chose to frame his Complaint as a § 1983 claim. To the extent Plaintiff is requesting the Court construe Plaintiff's cause of action differently from how he chose to frame it, the Court declines to do so. Plaintiff is represented by counsel in this action. Even if Plaintiff were proceeding *pro se*, the Court may not "serve as *de facto* counsel for a party, or [] rewrite an otherwise deficient pleading in order to sustain an action." *Callahan v. Emory Healthcare, Inc.*, No. 23-10604, 2024 WL 3027684, at *4 (11th Cir. June 17, 2024) (citation and internal quotation marks omitted). Because it is clear that Plaintiff has failed to state a claim under §

---

[4] Plaintiff's refusal to concede this point despite the Court's warning at the preliminary injunction hearing as well as the plain language of § 1983 and case law cited by Defendant is baffling. (Doc. 39 at 9–10; Doc. 42 at 18; Doc. 46 at 12).

1983, the Court declines to address the Parties' arguments concerning the merits of Plaintiff's § 1983 claim under *Lindke v. Freed*, 601 U.S. 187 (2024). (Doc. 42 at 21–24; Doc. 46 at 16–19).

In summary, the Court is not convinced that Defendant's choice to unblock Plaintiff and implement a new social media policy for his X account renders Plaintiff's case moot at this juncture. However, Plaintiff has failed to state a claim against Defendant because Plaintiff chose to assert a § 1983 claim against Defendant, a federal official acting under color of federal law. Plaintiff must plead a viable cause of action against Defendant, or else this case will be dismissed with prejudice. Plaintiff will get one opportunity to do so. Accordingly, Defendant's Motion to Dismiss will be granted.

Based on the foregoing, it is ordered as follows:

1.      Defendant Randall Fine's Motion to Dismiss (Doc. 42) is **GRANTED**.

2.      Plaintiff Amjad Masad's Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.

3.      Within **21 Days** of the date of this Order, Plaintiff Amjad Masad may file an amended pleading that remedies the deficiencies identified in this Order. Failure to timely file will result in dismissal with prejudice of this case. Plaintiff shall only amend if doing so would comport with the requirements of Federal Rule of Civil Procedure 11(b).

4.    Plaintiff's Request for Oral Argument (Doc. 47) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on June 22, 2026.

/s/ Anne C. Conway_____
Anne C. Conway
United States District Judge

Copies furnished to:

Counsel of Record