# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

AMJAD MASAD,

*Plaintiff*,

v.

RANDALL FINE,

*Defendant.*

Case No.
6:26-cv-00442-ACC-RMN

## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Defendant the Honorable Randall Fine, U.S. Representative for the 6th

Congressional District of Florida, hereby moves pursuant to Federal Rule of Civil

Procedure 12(b)(1) for an Order dismissing Plaintiff Amjad Masad's Amended

Complaint, ECF 56, for lack of subject-matter jurisdiction due to mootness and

lack of standing.

Because Plaintiff is not blocked from Defendant's X account, and

Representative Fine has committed both to not block Plaintiff based on viewpoint

and to enforce a posted policy in a viewpoint-neutral manner for the duration of his

service in Congress, Plaintiff now has no redressable injury. The Amended

Complaint is therefore moot under both an Article III and prudential mootness

analysis. Additionally, because the Amended Complaint contains new factual

allegations that occurred after the original complaint, it is best viewed as a

supplemental complaint, meaning Plaintiff lacked standing at the time it was filed. For these reasons set forth in the accompanying memorandum, this case should be dismissed with prejudice.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### I.   Introduction

Plaintiff's amended complaint should be dismissed because this case is moot: Plaintiff has now been unblocked and able to interact with Defendant's @repfine X account for more than three months and cannot meet his burden of showing a reasonable basis to believe he will be blocked in the future based on viewpoint.  Moreover, Plaintiff's speculation about future injury is undercut by the fact that, since the Court's June 22, 2026 Order, ECF 53, Representative Fine has strengthened and clarified his commitments that Plaintiff will not be blocked based on viewpoint and Defendant will enforce a posted social media policy in a viewpoint-neutral manner for the duration of his time in Congress.  Because Plaintiff cannot meet his burden of demonstrating a "reasonable basis" to believe Representative Fine will block him based on viewpoint in the future, his case is moot.  *See Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1271 (11th Cir. 2020) (citation omitted).  And even if the Court does not find the case moot under Article III standards, equitable considerations still counsel in favor of dismissal on prudential mootness grounds.

Finally, Plaintiff's amended complaint contains new allegations including actions that postdate the filing of the original complaint. This renders the operative complaint a "supplemental" complaint, meaning Plaintiff must demonstrate standing as of the filing of the new complaint. *Infra* Section IV.C. Because Plaintiff no longer has an actual or imminent injury, he cannot meet this burden.

## II.    Background

The Honorable Randall Fine represents the 6th Congressional District of Florida in the U.S. House of Representatives. In that role, he operates an X (formerly Twitter) account with the handle @repfine and the name "Congressman Randy Fine." Declaration of the Honorable Randall Fine in Support of His Motion to Dismiss Plaintiff's Amended Complaint ("Fine Decl.") ¶ 3.[1] On February 15, 2026, Plaintiff's X account (@amasad) was blocked from directly engaging with the @repfine account. Fine Decl. ¶ 5. On February 25, Plaintiff filed the instant lawsuit challenging that blocking. ECF 1. Plaintiff was unblocked from the @repfine account on April 13, 2026, fully restoring his ability to interact with the account. Fine Decl. ¶ 7.

---

[1] In his amended complaint, Plaintiff again references another X account with the handle @voterandyfine. ECF 56 ¶ 12(b). But Plaintiff's allegations only include facts regarding Plaintiff being blocked from the @repfine X account, *see, e.g.*, ECF 56 ¶¶ 1-3, 15-16, 21-26, meaning the @voterandyfine account, Defendant's personal campaign account on X, is not relevant to this action.

3

Since he has been unblocked, Plaintiff is again able to follow the @repfine account and engage with its posts to the full extent allowed by the platform by liking, replying, reposting, and participating in discussion threads related to those posts. *See Blocking on X*, X Help Center, https://help.x.com/en/using-x/blocking-and-unblocking-accounts (last visited July 15, 2026). For example, on April 25 and May 17, 2026, Plaintiff engaged with the @repfine account by replying to two separate posts. Amjad Masad (@amasad), *X* (Apr. 25, 2026, 4:00 AM), https://perma.cc/TVQ2-KBEE; Amjad Masad (@amasad), *X* (May 17, 2026, 6:40 PM), https://perma.cc/Y6AU-HMKZ.

On May 11, 2026, Defendant published a new social media policy to his @repfine X account, setting forth viewpoint-neutral criteria under which discussions on the page may be moderated. *See* Fine Decl. ¶ 9; *id.* Ex. A. The policy itself makes clear that it is to be "enforce[d] on a viewpoint-neutral basis." *Id.* Ex. A. Representative Fine also commits to implementing a posted social media policy in a viewpoint-neutral manner for the remainder of his time in Congress,[2] including as it applies specifically to Plaintiff. *See id.* ¶¶ 10, 12. In addition, Representative Fine has clarified that he instructed his staff that he is the

---

[2] Representative Fine's social media policy makes clear that his @repfine account is "a moderated online discussion site and not an unlimited public forum." Fine Decl., Ex. A. It identifies certain viewpoint-neutral categories of comments, like threats, incitement of violence, and sexually explicit content, that are subject to removal and enforcement. *Id.*

4

sole individual with authority to block any user, including Plaintiff, from the @repfine account and commits specifically not to block Plaintiff based on his expressed viewpoints. *Id.* ¶ 10. Everyone previously blocked from the @repfine account was unblocked prior to the posting of the new social media policy. *Id.* ¶ 11. No one is currently blocked from the @repfine account, and no one has been blocked since the policy was posted in May 2026. *Id.*

On June 22, 2026, the Court issued an order granting Representative Fine's Motion to Dismiss, dismissing Plaintiff's complaint without prejudice for failure to state a claim, and providing Plaintiff 21 days to amend his complaint. ECF 53 at 15. Plaintiff filed his amended complaint two days later, asserting a claim directly under the First Amendment and including new factual allegations about actions occurring since the filing of his original complaint. *See* ECF 56. For instance, he now contends that he was unblocked and that the Congressman has adopted a new social media moderation policy that lacks an external enforcement mechanism. ECF 56 ¶¶ 32-35, 40, 53. The injunctive relief he seeks now relates solely to preventing the possibility of being blocked in the future. *See id.* at 11-12.

## III. Legal Standard

Article III limits the jurisdiction of federal courts to the consideration of "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "The doctrine of mootness derives directly from the case-or-controversy limitation because 'an

action that is moot cannot be characterized as an active case or controversy,'" meaning it speaks to a court's subject matter jurisdiction to hear a case. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (per curiam) (citation omitted). Accordingly, a motion to dismiss for mootness is brought under Rule 12(b)(1). *Couture v. Austin*, 720 F. Supp. 3d 1243, 1248 (M.D. Fla. 2024). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Al Najjar*, 273 F.3d at 1335-36 (citation omitted). In resolving a motion to dismiss for lack of subject matter jurisdiction, a district court may refer to evidence outside the pleadings. *See, e.g., Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) ("[W]here a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as … affidavits.").

## IV.    Argument

### A.    This case is moot because Plaintiff is unblocked from the @repfine account and cannot show a reasonable basis to believe he will be blocked in the future based on viewpoint

The circumstances of this case have fundamentally changed, since both the filing of Plaintiff's initial complaint and this Court's June 22 Order, now rendering this case moot. With regard to changes since Plaintiff's initial complaint, Plaintiff has now been free to fully interact with the @repfine account for more than three

6

months, *see* Fine Decl. ¶ 7, and has done so,[3] meaning his alleged harm from being blocked is entirely in the past. Representative Fine "unambiguously terminated his challenged conduct," ECF 53 at 7, by unblocking Plaintiff and every previously blocked account on the @repfine account, Fine Decl. ¶¶ 7,11, adopting a viewpoint-neutral social media policy governing moderation of activity on the @repfine account, *id.* ¶ 9, Ex. A, posting that policy on his official Congressional website, *id.*, and committing to implement his social media policy "in a viewpoint-neutral manner when moderating future activity on the @repfine account, including with respect to Plaintiff," *id.* ¶ 10. Because Defendant is a government actor who has established unambiguous termination, the "rebuttable presumption" that he will honor this commitment to viewpoint-neutral moderation applies. ECF 53 at 7.[4] Accordingly, this case is "'moot in the absence of some reasonable basis

---

[3] Amjad Masad (@amasad), *X* (Apr. 25, 2026, 4:00 AM), https://perma.cc/TVQ2-KBEE; Amjad Masad (@amasad), *X* (May 17, 2026, 6:40 PM), https://perma.cc/Y6AU-HMKZ.

[4] Government actors who unambiguously terminate prior challenged conduct, like Representative Fine, enjoy a "rebuttable presumption" that the allegedly objectionable behavior will *not* recur. *Troiano v. Supervisor of Elections in Palm Beach Cnty.*, 382 F.3d 1276, 1283 (11th Cir. 2004); *see also id.* ("Courts are more apt to trust public officials than private defendants to desist from future violations." (internal quotation marks and citation omitted)); *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1310 (11th Cir. 2011) ("Hence, 'the Supreme Court has held almost uniformly that voluntary cessation [by a government defendant] moots the claim.'" (alteration in original) (citation omitted)); *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328-29 (11th Cir. 2004) ("[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume [allegedly] illegal activities.").

to believe that the policy will be reinstated if the suit is terminated.'" *Id.* at 6

(quoting *Doe v. Wooten*, 747 F.3d 1317, 1323 (11th Cir. 2014)).

In its June 22 Order, this Court determined that "based on the totality of the circumstances, there is a reasonable basis to believe that Defendant will resume his viewpoint-based blocking of Plaintiff if this action is terminated." ECF 53 at 13. But since that time, the circumstances have changed, leaving Plaintiff no reasonable basis to believe that he will be blocked from the @repfine account based on viewpoint. Representative Fine has now (1) committed to enforcing a posted social media policy on his official X account in a viewpoint-neutral manner for the remainder of his time in Congress, (2) consistently maintained and demonstrated his commitment to the policy for nearly two-and-a-half months since it was posted without blocking Plaintiff or anyone else, and (3) provided an updated declaration detailing how the policy resulted from substantial deliberation with both his staff and his counsel. *See* Fine Decl. ¶¶ 9-12. Because the totality of the circumstances illustrates that there is no reasonable basis to believe that Plaintiff will be blocked based on viewpoint if this action is terminated, Plaintiff cannot meet his burden of rebutting the presumption that Representative Fine will honor his commitments. Plaintiff's action is now moot.

"If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff … meaningful relief, then the

case is moot and must be dismissed." *Troiano*, 382 F.3d at 1282 (citation omitted). In other words, "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations omitted). "[D]ismissal is required because mootness is jurisdictional," and "[a]ny decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Troiano*, 382 F.3d at 1282 (citation omitted).

While terminating allegedly illegal conduct does not automatically moot a case due to the voluntary cessation exception, a case "may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated." *Id.* at 1283 (citation omitted). Government defendants have "more leeway than private parties in the presumption that they are unlikely to resume illegal activities." *Wooten*, 747 F.3d at 1322 (citations omitted). Therefore, "once a government actor establishes unambiguous termination of the challenged conduct, the controversy 'will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated.'" *Id.* at 1323 (citation omitted).

Accordingly, after unambiguous termination, "the plaintiff bears the burden of showing that there is a reasonable expectation that the government will reverse course." *Parnell v. Sch. Bd. of Lake Cnty.*, 685 F. Supp. 3d 1339, 1351 (M.D. Fla.

9

2023) (quoting *Walker v. City of Calhoun*, 901 F.3d 1245, 1270 (11th Cir. 2018)).

This burden requires that a plaintiff "present[] affirmative evidence that its

challenge is no longer moot." *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329,

1334 (11th Cir. 2005) (per curiam). "Mere speculation" that the government "may

return to its previous ways is no substitute for *concrete evidence* of secret

intentions." *Id.* (emphasis added).

In evaluating whether a plaintiff has met his burden of showing a reasonable

expectation that a government defendant will reverse course after a lawsuit is

terminated, courts also consider three non-exclusive factors:

> (1) "whether the change in conduct resulted from substantial
> deliberation or is merely an attempt to manipulate our jurisdiction"; (2)
> whether the decision to end the challenged conduct was "unambiguous"
> and can be "fairly viewed as being 'permanent and complete'"; and (3)
> "whether the government has consistently maintained its commitment
> to the new policy."

*Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 115 F.4th

1266, 1284-85 (11th Cir. 2024), *cert. denied*, 146 S. Ct. 607 (2025). These factors

"should not be viewed as exclusive nor should any single factor be viewed as

dispositive." *Keohane*, 952 F.3d at 1268 (citation omitted). "[T]he most important

inquiry is whether [the Court] believe[s]" that the government will return to its

"prior course of conduct." *City of Miami*, 402 F.3d at 1334.

Here, Plaintiff's alleged harms all ended when Representative Fine

unblocked him. Plaintiff's amended complaint acknowledges that he has enjoyed

full access to the @repfine account since April 13, 2026, *cf.* ECF 56 ¶ 32, meaning

he is able to reply to Representative Fine's posts, repost, comment, participate in

discussion threads, and fully engage with other users on the official page, exactly

as he was before he was blocked. *See supra* at 4. And because a declaratory

judgment is limited to prospective relief, and monetary damages are not available

here, *Egbert v. Boule*, 596 U.S. 482, 498-99 (2022), his request for a declaration

regarding the legality of the prior blocking is now also moot. *See C.F.C. v. Miami-

Dade Cnty.*, 349 F. Supp. 3d 1236, 1254 (S.D. Fla. 2018) ("To the extent that

Plaintiffs request a declaration from this Court related to past conduct alone, such

declaratory relief is moot.").

Moreover, based on factual developments since initiation of this litigation,

Plaintiff has no reasonable basis to believe he will be blocked from the @repfine

account based on viewpoint in the future. The totality of the circumstances,

including the Eleventh Circuit's three non-exclusive factors, demonstrates why

Plaintiff cannot meet his burden of demonstrating that this case is not moot.

***First***, Representative Fine has "unambiguously terminated his challenged

conduct," ECF 53 at 7,[5] and that termination can be "fairly viewed as being

'permanent and complete.'" *Cambridge Christian Sch.*, 115 F. 4th at 1285.

---

[5] Prior to Representative Fine implementing his new moderation policy for his @repfine account, Representative Fine was "thorough in terminating his alleged viewpoint discrimination by unblocking Plaintiff as well as every blocked account on his X Account." ECF 53 at 7.

Specifically, after unblocking Plaintiff, Representative Fine posted a moderation policy for his @repfine account and has committed to viewpoint-neutral implementation in the future, including as applied to Plaintiff.  *See* Fine Decl. ¶¶ 9-10; *id.* Ex. A.  That same policy remains in effect to date.  Moreover, since the Court's June 22 Order, Representative Fine has strengthened and added to these commitments in an updated declaration in support of the instant motion.  He has committed to enforcement of a posted social media policy on his official X account in a viewpoint-neutral manner for the remainder of his time in Congress.  Fine Decl. ¶ 12.  He has also specifically committed that Plaintiff will not be blocked from the @repfine account based on his expressed viewpoints.  *Id.* ¶ 10.  And he has instructed his Congressional staff that he is the only one with authority to block Plaintiff's account or any account from the @repfine account.  *Id.*

In other words, Representative Fine is effectively committing that he will not "reverse course with the click of a button," ECF 53 at 9 (emphasis removed). This specific commitment to not block Plaintiff based on his viewpoint and to adhere to a viewpoint-neutral policy on his official page, Fine Decl. ¶ 10, 12, can at least be "fairly viewed" as both permanent and complete, *Cambridge Christian Sch.*, 115 F. 4th at 1285.  Beyond the "serious hoop-jumping" that would be necessary to reverse course, *cf.* ECF 53 at 10 (quoting *Keohane*, 952 F.3d at 1269), blocking Plaintiff based on his viewpoint at this juncture would require *both* that

he directly violate his sworn declaration to this Court, *see* Fine Decl. ¶ 10, *and* disregard or rescind a posted policy that he has committed to maintain for the duration of his tenure in office, *see id.* ¶ 12.  Finding a reasonable expectation of such future violations in the face of these commitments would flip the presumption enjoyed by government actors on its head.  *See Keohane*, 952 F.3d at 1267-68 ("[G]overnment actors are more likely than private defendants 'to honor a professed commitment to changed ways.'" (citations omitted)); *id.* at 1269 (Because the court had "previously relied on … representations" that the government did not intend to reenact the prior policy, and there was "no evidence … that would cause [the court] to doubt them," this factor supported mootness.); *Saladin v. City of Milledgeville*, 812 F.2d 687, 689, 693 (11th Cir. 1987) (holding that because City ceased challenged action and "advised" and "represented to the court" that it would not reverse course, that "promise[]" was sufficient to moot the case); *Parnell*, 685 F. Supp. 3d at 1354 ("[T]he Court cannot compel [d]efendants to do something they have already done and have promised to do in the future.").

Representative Fine's revised declaration also addresses issues this Court identified that made his previous commitment appear incomplete.  *See* ECF 53 at 11.  Specifically, while the Court noted that his previous commitment to moderating activity on his X account applied only to himself without clarifying who blocked Plaintiff from the @repfine account, *id.* (quoting ECF 36-1 ¶ 5; ECF

13

42-1 ¶¶ 5, 10), his updated declaration identifies exactly "who controls" the @repfine account and who "is responsible for social media management and blocking," *Pinkhasov v. Vernikov*, No. 1:23-CV-3460, 2024 WL 2188356, at *7 (E.D.N.Y. May 15, 2024). The declaration clarifies that Representative Fine himself blocked Plaintiff from the account. Fine Decl. ¶ 5. And although Representative Fine has separately authorized certain senior members of his Congressional staff to access and operate the @repfine account on his behalf, *id.* ¶ 3, those staff members have been instructed that Representative Fine possesses sole authority to block Plaintiff's account or any account from the @repfine account, *id.* ¶ 10. Accordingly, Defendant's commitments to implementing his policy in a viewpoint-neutral manner when moderating future account activity, and to not block Plaintiff based on viewpoint, *id.*, are both clear and complete.

Representative Fine's concrete sworn commitments (and accompanying action) contrast starkly with the paltry evidence offered by Plaintiff, who bears the burden of demonstrating a reasonable expectation that he will be blocked from the @repfine account again in the future based on viewpoint. In the Amended Complaint, the best Plaintiff can point to remains the unverified allegations of viewpoint-based blocking from a complaint in another case, *Baker v. Fine*, No. 5:26-cv-00135 (M.D. Fla. filed Feb. 20, 2026); *see* ECF 56 ¶ 31, and pure speculation about what "may" happen in the future, *id.* ¶ 48. This single,

14

unsubstantiated allegation falls short of "concrete evidence" supporting a reasonable expectation of being blocked based on viewpoint in the future, *cf. City of Miami*, 402 F.3d at 1334 (holding that "[m]ere speculation" "is no substitute for concrete evidence"), or of a longstanding or "continuing practice" of viewpoint-based blocking, *Troiano*, 382 F.3d at 1285 (citation omitted).  Even if the plaintiff in the other pending case had been previously blocked from the @repfine account, that would not establish that the plaintiff was blocked for viewpoint-based reasons. Failing to eliminate the host of potential alternative viewpoint-neutral reasons for which that individual may have been blocked renders this kind of speculation inadequate to overcome mootness.  And in any case, that alleged blocking took place before the current social media policy was adopted, meaning it does not speak to Representative Fine's commitment to viewpoint-neutral enforcement of the policy moving forward.  By contrast, since the policy was adopted on May 11, 2026, no one has been blocked from the @repfine account.  Fine Decl. ¶¶ 9, 11.

Finally, the fact that the @repfine account is a moderated discussion site and not an unlimited public forum, Fine Decl. Ex. A, is not evidence that commenters' speech will be moderated based on their viewpoints.  The First Amendment does not mandate that government officials who open their official social media pages for public comments operate them as unlimited public forums.  *Cf. Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46 n.7 (1983) ("A public forum

15

may be created for a limited purpose such as ... the discussion of certain subjects."); *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011) (noting that a restriction in a limited public forum "need not be the most reasonable or the only reasonable limitation" (citation omitted)).  Representative Fine's content-based but viewpoint-neutral restrictions in his policy are consistent with First Amendment principles.  *See infra* at 18-19.

*Second*, since his new social media policy was publicly posted on his official Congressional website on May 11, Representative Fine has consistently maintained his commitment to that policy.  This Court previously determined that this factor weighs in Defendant's favor because of Plaintiff's inability to allege or otherwise show that Defendant has failed to consistently maintain his commitment to his new policy.  ECF 53 at 11.  That remains true today.  And while the significance of this factor was previously limited by the fact that the policy had only been recently adopted, *id.*, additional time has since passed: The policy has now been in effect for nearly two-and-a-half months, and every account that was unblocked before the policy's implementation (including Plaintiff's account) has remained unblocked during that period.  *See* Fine Decl. ¶¶ 9, 11.  This reflects Representative Fine's sincere commitment to applying his revised social media

policy.[6]  And as the Court noted, Representative Fine has also shown public commitment to his policy by posting it on his official Congressional website, ECF 53 at 12, where it has remained posted during the full duration of this same period, *see* Fine Decl. ¶ 9.  This factor thus weighs more significantly in favor of Representative Fine now than it did at the time of this Court's June 22 Order.

Plaintiff misapplies this factor by claiming that Representative Fine needs to "disavow[] the constitutionality" of blocking Plaintiff to show sincere commitment to maintaining his policy.  ECF 46 at 8; *see also* ECF 56 ¶ 53.  Contrary to Plaintiff's assertion, for purposes of mootness, the Court's focus is on whether Plaintiff's expectation of future unconstitutional blocking is reasonable rather than on adjudicating the past conduct.  *See Keohane*, 952 F.3d at 1269.  Accordingly, where there is "no 'reasonable expectation' that the challenged practice [would] resume after the lawsuit is dismissed," the constitutionality of the prior practice is then "a purely academic point."  *Troiano*, 382 F.3d at 1284 (quoting *Jews for Jesus v. Hillsborough Cnty. Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998)).

***Third***, as clarified in his most recent declaration, Representative Fine's social media policy resulted from substantial deliberation.  Specifically, because issues related to the administration of Representative Fine's social media accounts

---

[6] In this sense, Representative Fine has shown a more consistent commitment to his new policy than the defendant in *Keohane*, where the plaintiff alleged the prior rescinded policy had been applied to an inmate post-repeal; but even that deviation from the new policy was not sufficient on its own to show that it had not been consistently applied.  *See* 952 F.3d at 1270.

17

were occupying too much of his and his staff's time, Representative Fine decided to formalize and restructure the administration of his official social media accounts. Fine Decl. ¶ 9. Accordingly, Representative Fine "substantial[ly] deliberat[ed] with both [his] staff and the Office of General Counsel of the U.S. House of Representatives to develop a workable and First Amendment-complaint policy" that would "outline[] the criteria by which discussions on the @repfine X account will be moderated" moving forward. *Id.* And while the government's "purpose" or "motivation" for voluntarily ceasing the challenged conduct is not the Court's focus, *City of Miami*, 402 F.3d at 1334, here Representative Fine did have a purpose beyond the instant litigation: He took this action "to spend less time and attention on issues related to the administration of [his] official social media accounts and more time on other important matters impacting [his] constituents." *Id.* As this Court noted, "the Eleventh Circuit has made it clear that courts should not 'overemphasize[]' the timing of a government defendant's change in conduct." ECF 53 at 8 (citing *Keohane*, 952 F.3d at 1269).

Beyond Representative Fine's declaration, the fact that these deliberations produced a carefully crafted social media policy that precisely accords with First Amendment principles, *see* Fine Decl. Ex. A, further supports that the policy was the result of substantial deliberation. Specifically, Representative Fine's social media policy identifies viewpoint-neutral categories of comments like threats,

incitement of violence, and sexually explicit content that are subject to removal and enforcement on the @repfine account. *Id.* Under First Amendment doctrine, such reasonable content-based but viewpoint-neutral restrictions are appropriate even if one were to conclude that this X account is a limited public forum. *See Bloedorn*, 631 F.3d at 1231 ("Any restrictions made on expressive activity in a limited public forum only must be reasonable and viewpoint neutral."). The substance (and existence) of the policy itself thus bolsters Representative Fine's representation that the policy was a "product of substantial deliberation," Fine Decl. ¶ 9.

At bottom, because Plaintiff lacks a reasonable basis to believe Representative Fine will block him based on viewpoint, other less-weighty considerations (*e.g.*, timing or alleged motive for unblocking, *see Keohane*, 952 F.3d at 1269-70) cannot overcome mootness here. Since any alleged harm to Plaintiff has ceased, and he cannot meet his burden of showing a reasonable expectation of future injury under the totality of the circumstances, this Court lacks subject matter jurisdiction and should dismiss Plaintiff's case as moot.[7]

---

[7] As a practical matter, should Representative Fine's social media policy be enforced against Plaintiff in an allegedly viewpoint-based manner down the road, "the courthouse door is open to [Plaintiff] to reinstate [his] lawsuit." *Jews for Jesus*, 162 F.3d at 630.

**B. Alternatively, this Court Should Exercise Its Discretion to Dismiss This Case Under the Doctrine of Prudential Mootness**

Even if the Court finds that the changed circumstances in this case do not rise to the level of rendering the case moot under Article III standards, the Court can still exercise its discretion to dismiss this case under the doctrine of prudential mootness. "Prudential mootness is a discretionary equitable doctrine that is not concerned with our Article III powers, and, therefore, is not jurisdictional." *Baker v. City of Atlanta*, 164 F.4th 850, 860 n.6 (11th Cir. 2026); *see also Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991) (noting that prudential mootness "is concerned, not with the court's power under Article III to provide relief, but with the court's discretion in exercising that power").

Under this doctrine, a court may exercise its discretion and decline to grant relief "in the context of a controversy that has become 'so attenuated that considerations of prudence and comity ... counsel the court to stay its hand, and to withhold relief it has the power to grant.'" *Ingaseosas Int'l Co. v. Aconcagua Inv. Ltd.*, 479 Fed. Appx. 955, 962 (11th Cir. 2012) (quoting *Chamber of Com. v. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)); *Baker*, 164 F.4th at 860 n.6 (same). The court must consider both "prudence and comity for coordinate branches of government" in making this determination. *Chamber of Com.*, 627 F.2d at 291. The essential inquiry is "whether changes in circumstances that

prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Ingaseosas Int'l Co.*, 479 Fed. Appx. at 962 (citation omitted).

This Court should exercise its discretion to dismiss this case because Representative Fine has already granted Plaintiff the equitable relief sought in his complaint. *See Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1381 (N.D. Ga. 2023) (granting motion to dismiss because defendant promised plaintiffs relief they sought). Representative Fine has unblocked Plaintiff and made an affirmative commitment to enforce a social media policy in a viewpoint-neutral manner going forward—the essential relief sought in Plaintiff's complaint— thereby rendering any order from this court unnecessary. *See* Fine Decl. ¶¶ 10, 12. At most, what remains after this change in circumstances are Plaintiff's alleged concerns about the mere possibility of being blocked again in the future, ECF 56 ¶ 53, which are not sufficient to prevent this case from becoming prudentially moot. *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1211 (10th Cir. 2012) ("Though a remedial promise may not be enough to kill a case constitutionally, it can be enough to bring it to an end all the same as a matter of equity."); *see also id* at 1210-11 ("[E]ven when the risk of recalcitrance is injury enough to keep the case alive as an Article III matter, it isn't necessarily enough to avoid the application of prudential mootness doctrine."). Plaintiff bears the burden to show "a cognizable danger of failure," and "must point [the court] to something

21

more than the mere possibility of failure." *Id.* at 1212, 1214.  Moreover, because

Representative Fine is an elected official from a coordinate branch of government,

the United States Congress, interests of comity likewise favor giving appropriate

weight to his decisions, repeated assurances, and commitments regarding future

administration of his official social media account.

Ultimately, in the face of Representative Fine's continued commitment to

enforce his social media policy in a viewpoint-neutral manner and strengthened

commitments regarding future viewpoint-neutral enforcement of a posted policy

for the duration of his time in Congress, Plaintiff has provided nothing more than a

hypothetical possibility rather than a cognizable danger.  All meaningful relief has

already been provided to Plaintiff at this stage.  Accordingly, this Court should

exercise its discretion under the prudential mootness doctrine and dismiss the case.

## C. Plaintiff Lacks Standing to Pursue His Supplemental Complaint

After dismissing Plaintiff's original complaint, the Court granted leave for

Plaintiff to file an amended complaint, *see* ECF 53, but Plaintiff erred by filing a

document that is both an amended complaint and a supplemental complaint.

Besides substantively changing the underlying legal theory under which the suit

was brought, Plaintiff also added facts that occurred after the original complaint

was filed.  *See, e.g.* ECF 56 ¶ 32-36.  This addition to the original complaint makes

the complaint a supplemental complaint in substance, in addition to an amended

complaint.  Fed. R. Civ. P. 15(d) ("The court may…permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."); *Lutter v. JNESO*, 86 F.4th 111, 124-25 (3d Cir. 2023) ("An amendment revises the allegations, claims, and prayers for relief in a complaint to reflect the state of things *as of* the date the action was commenced…. By contrast, supplementation adds or alters allegations, claims, or prayers for relief in the complaint based on events that occurred *after* the initiation of the lawsuit."); *see also Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1252 n.11 (11th Cir. 2005) (noting that pleadings are judged by their substance rather than form or label).

Unlike the filing of a true amended complaint, standing is assessed at the time of the filing of a supplemental complaint for claims and relief substantively affected by the supplementation.  *Lutter*, 86 F.4th at 125-26 & n.15.  Here, not only did Plaintiff substantively change his only claim from one based on Section 1983 to a direct First Amendment claim, but Plaintiff also pleads supplemental facts occurring *after* the filing of the case that substantively affect this sole claim.   For instance, as part of his new First Amendment claim, Plaintiff now asserts that Representative Fine allegedly continues to maintain *post-unblocking* that his prior conduct was lawful and has failed to disavow it.  ECF 56 ¶¶ 36, 53.  Plaintiff also alleges that his First Amendment rights are at risk because the new policy lacks an

"external enforcement mechanism" and Representative Fine maintains the authority to block Plaintiff in the future.  ECF 56 ¶¶ 35, 37, 40, 53.  These additional factual allegations, which post-date the original complaint, amount to the kind of substantive changes to the original claim that require it to be properly considered a supplemental complaint.  *See Lutter*, 86 F.4th at 126 (finding revisions that add substantive facts to the original complaint make an amended complaint both an amended and supplemental complaint, thus changing the date standing is assessed to the time the revised complaint is filed); *see also Clark v. United Parcel Serv., Inc.*, 2019 WL 13292994 at *3 (N.D. Ga. Dec. 17, 2019) ("Because plaintiff seeks to add some claims relating to events that occurred after the Complaint, the pleading is governed by Rule 15(d) as a supplemental, rather than amended, complaint."), *report and recommendation adopted*, 2020 WL 13682483 (N.D. Ga. Jan. 10, 2020).  Accordingly, standing is assessed at the time the supplemental complaint was filed.  *See Lutter*, 86 F.4th at 125-26.

Plaintiff lacked standing at the time he filed his supplemental complaint to seek any prospective relief.  The Eleventh Circuit recognizes that standing under Article III has three required elements: (1) the plaintiff must have suffered a concrete and particularized injury in fact which is actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) the injury must be likely to be

24

redressed by a favorable decision.  *Fla. Fam. Pol'y Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009) (citation omitted).

Plaintiff fails the first element.  "Because declaratory and injunctive relief necessarily do not redress past harm, standing for such claims requires a showing of an ongoing or future injury … or that a future injury is 'certainly impending.'" *Maisonet v. Comm'r, Ala. Dep't of Corr.*, 2022 WL 4283560 at *2 (11th Cir. 2022) (citation omitted).  Plaintiff admits in his complaint that there is no ongoing actual injury because he was not blocked by Representative Fine or in any way limited from interacting with the @repfine account at the time the supplemental complaint was filed.  *See* ECF 56 ¶ 53.  Additionally, at this stage Plaintiff alleges merely a possibility of future harm from the "continuing threat that [Representative Fine] *may* again exclude Plaintiff from the Interactive Space[.]"  ECF 56 ¶ 48 (emphasis added).  This type of alleged future injury is "too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (citation omitted).

Because Plaintiff cannot establish standing at the time his supplemental complaint was filed, this case should be dismissed.

## V.    Conclusion

For the foregoing reasons, this case should be dismissed with prejudice.

25

Respectfully submitted,

MATTHEW B. BERRY (VA Bar No. 42600)
   *General Counsel*
TODD B. TATELMAN (VA Bar No. 66008)
   *Deputy General Counsel*
SARAH E. CLOUSE (MA Bar No. 688187)
   *Associate General Counsel*
*/s/ Kenneth C. Daines*
KENNETH C. DAINES (DC Bar No. 1600753)
   *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
Ken.Daines@mail.house.gov

July 22, 2026

*Counsel for Defendant the Honorable Randall Fine*

26

## LOCAL RULE 3.01(g) CERTIFICATE

I hereby certify that counsel for Defendant conferred with counsel for Plaintiff on the relief sought in this motion on July 21, 2026, by telephone and email correspondence in a good faith effort to resolve the motion.  The parties do not agree on the resolution of this motion.

*/s/ Kenneth C. Daines*
Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2026, I caused the foregoing document to be filed via this Court's CM/ECF system, which I understand caused service on all registered parties.

*/s/ Kenneth C. Daines*
Counsel of Record