**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| **AMJAD MASAD,** | |
| *Plaintiff,* | Case No. 6:26-cv-00442 |
| **v.** | |
| **RANDALL FINE,** *in his official capacity as a member of the U.S. House of representatives and his individual capacity,* | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| *Defendant.* | |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## I.    Introduction

Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) should be denied for two independent reasons. First, contrary to Defendant's assertions, this case is not moot—as this Court has already found. Defendant's revised declaration does not fundamentally alter the circumstances underlying this Court's prior determination that "[t]he timing of Defendant unblocking Plaintiff and creating his social media policy is a clear indication that Defendant was trying to rid himself of this litigation." *See Masad v. Fine,* No. 6:26-cv-00442 (M.D. Fla. June 22, 2026). Defendant still retains unilateral control over the @repfine account and its

content moderation and remains free to reimpose the challenged restrictions absent a court order.

Second, Defendant's newly asserted standing argument lacks merit. Plaintiff possessed standing when this action was filed, and the First Amended Complaint ("FAC") merely corrected the procedural vehicle for Plaintiff's claim and updated the allegations to include relevant developments during the litigation. Those amendments neither extinguish Plaintiff's standing nor deprive this Court of jurisdiction.

In sum, Defendant's Motion to Dismiss the First Amended Complaint should be denied.

## II.   Background

As alleged in the First Amended Complaint ("FAC"), Defendant Randall Fine represents Florida's Sixth Congressional District in the United States House of Representatives. First Am. Compl., ECF No. 56, ¶¶ 11-18. In that role, he operates an X account with the handle "@repfine" and the name "Congressman Randy Fine." FAC ¶ 12. Defendant uses that account to communicate with constituents and members of the public about legislation, governmental affairs, policy positions, constituent services, and official activities. *Id.* ¶¶ 13–18. The account also links directly to Defendant's official congressional webpage and allows members of the public to reply to posts, repost content, and participate in public discussion threads. *Id.* As alleged in the FAC, Defendant had a longstanding pattern of engaging in extreme anti-Muslim, anti-Arab rhetoric on X: *inter alia*, he

has referred to Palestinians as inherently "evil," accused all Muslims of promoting "Muslim terror," and called for the denaturalization and deportation of a Muslim public official. *Id.* ¶ 22.

Against that backdrop, on February 15, 2026, Defendant posted from the @repfine account: "If they force us to choose the choice between dogs and Muslims is not a difficult one." *Id.* ¶ 21.[1] Plaintiff Amjad Masad, who is a Palestinian-Muslim American immigrant, replied to the post: "Are you talking about what's for lunch?" *Id.* ¶ 23. Shortly thereafter, Defendant blocked Plaintiff from the @repfine account and hid Plaintiff's reply from the discussion thread. *Id.* ¶¶ 25–26. As a result, Plaintiff could no longer reply to Defendant's posts, participate in discussion threads, repost Defendant's content, or otherwise engage with the account's interactive features available to other users. *Id.* ¶¶ 27,30.

On February 25, 2026, Plaintiff filed this action alleging that Defendant's viewpoint-based exclusion from the @repfine account violated the First Amendment. *See* Compl., ECF No. 1. On March 3, 2026, Plaintiff moved for preliminary injunctive relief requiring Defendant to unblock him during the pendency of this litigation. *See* Motion and Memorandum of Law in Support of Preliminary Injunction, ECF No. 10. After litigation commenced and 8 days before

---

[1] Defendant's remarks received substantial national attention and criticism. Following the May 2026 shooting at the Islamic Center of San Diego, Muslim advocacy organizations, religious leaders, and commentators publicly identified anti-Muslim rhetoric by elected officials, including Representative Fine's statements, as contributing to a broader climate of hostility toward Muslims. *See* Najib Jobain & Ali Harb, *After San Diego Shooting, Muslim Americans Want to Turn Grief Into Action*, Al Jazeera (May 24, 2026); Khaled A. Beydoun, *How Islamophobia Influencers Are Shaping the FBI's Response to the San Diego Shooting*, The Hill (May 30, 2026).

the hearing on the emergency motion, on April 13, Defendant unblocked Plaintiff from the @repfine account and purported to adopt a new social media content moderation policy governing the account—one that included no longer engaging in viewpoint-based blocking. *See* Def.'s Mot. to Dismiss Am. Compl., ECF No. 60, at 3-4.  Defendant did not inform Plaintiff that he had unblocked him until the day before the April 21, 2026 hearing.

Following the Court's June 22, 2026, Order dismissing Plaintiff's prior complaint without prejudice for failure to state a claim on grounds that are no longer relevant, and the filing of the First Amended Complaint, Defendant filed another Motion to Dismiss.[2]  Defendant contends that circumstances have materially changed since the Court's prior Order because he has maintained his new social media moderation policy without blocking Plaintiff or other users for over two months and has submitted an updated declaration providing additional assurances that he will enforce the policy in a viewpoint-neutral manner. *See* Def.'s Mot. to Dismiss Am. Compl. 7–8; Fine Decl. ¶¶ 9–12. These developments, in Defendant's view, render Plaintiff's claims moot and deprive Plaintiff of standing to pursue prospective relief.

---

[2] Defendant appears to have abandoned the argument in his initial motion to dismiss that Legislators are permitted to block other social media users because they do not speak for the State, so Plaintiff will not address that argument here.

4

## III.    Legal Standards

A Rule 12(b)(1) motion to dismiss may present either a facial or factual challenge to subject-matter jurisdiction. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). When the challenge is facial, the Court considers the allegations in the complaint as true. *Id.* A factual attack, by contrast, challenges the existence of subject matter jurisdiction in fact and permits the Court to consider matters outside the pleadings, including affidavits. *Id.*

To demonstrate Article III standing, a plaintiff must demonstrate: (1) an injury in fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992).

A defendant may attain dismissal under Rule 12(b)(1) when the case is moot, so there is no longer a case or controversy before the court. *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189–90 (11th Cir. 2011) (quoting *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1216 (11th Cir. 2009)). A case becomes moot only when "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)

(quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). Where a defendant bases his mootness claim on the voluntary cessation of challenged conduct, he bears the "formidable burden" of demonstrating that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw,* 528 U.S. at 190.

## IV.    Argument

### A. This Case Is Not Moot Because There Remains a Reasonable Basis to Believe the Challenged Conduct May Recur

Defendant principally argues that this case is moot because, after Plaintiff filed suit, Defendant unblocked Plaintiff from the @repfine account, adopted a new social media moderation policy, and submitted a second declaration containing more substantial assurances not to engage in viewpoint-based blocking in the future. But those developments do not fundamentally alter the calculus. As before, Defendant's policy change appears litigation-driven, and the risk remains that, absent a court order, he will revert to the challenged conduct once this litigation ends.

Under the voluntary cessation doctrine, a defendant cannot automatically moot a case "simply by ending its unlawful conduct once sued." *Already*, 568 U.S. at 91. A defendant ordinarily bears the "formidable burden" of demonstrating that it is "absolutely clear" the challenged conduct cannot reasonably be expected to recur. *Laidlaw*, 528 U.S. at 189–90.

The Eleventh Circuit affords governmental defendants some solicitude in applying that doctrine, but not the degree of lenience that Defendant suggests. "[O]nce a government actor establishes unambiguous termination of the challenged conduct, the controversy 'will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated.'" *Doe v. Wooten*, 747 F.3d 1317, 1322–24 (11th Cir. 2014) (emphasis added) (citing *Harrell v. Fla. Bar*, 608 F.3d 1241, 1267–68 (11th Cir. 2010)).

In determining whether there remains a reasonable basis to believe that a government defendant will resume the challenged conduct, courts consider three non-exclusive factors: (1) whether the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate our jurisdiction; (2) whether the decision to end the challenged conduct was unambiguous and can be fairly viewed as permanent and complete;  and (3) whether the government has consistently maintained its commitment to the new policy. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 115 F.4th 1266, 1284–85 (11th Cir. 2024) (citing *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1268 (11th Cir. 2020)). Courts are "more likely to find a reasonable expectation of recurrence when the challenged behavior constituted a 'continuing practice' or was otherwise deliberate." *Atheists of Fla., Inc. v. City of Lakeland*, 713 F.3d 577, 594 (11th Cir. 2013).

As a threshold matter, Plaintiff respectfully maintains that Defendant has not established unambiguous termination. Although Defendant unblocked

7

Plaintiff and other previously blocked users and represented that he would moderate the @RepFine account in a viewpoint-neutral manner, these unilateral, post-suit actions do not establish unambiguous termination.[3]

In any event, Defendant cannot establish mootness because there is a reasonable expectation of recurrence. As to the first prong of the "reasonable basis" test, the timing and circumstances of Defendant's change to his social media content moderation policy disfavor treating the challenged conduct as permanently abandoned. Defendant blocked Plaintiff immediately after the satirical remark criticizing Defendant's anti-Muslim rhetoric and restored Plaintiff's access only after this lawsuit was filed, shortly before the hearing on the preliminary injunction motion, and against the backdrop of another lawsuit challenging Defendant's blocking of another social media user in *Baker v. Fine*, Case No. 5:26-cv-00135-JSM-PRL (M.D. Fla. Feb. 20, 2026). Although timing is not dispositive, the Eleventh Circuit treats it as relevant in determining whether cessation represents genuine abandonment or litigation-driven conduct. *See Keohane,* 952 F.3d at 1268–69; *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 531–32 (11th Cir. 2013).

Defendant responds that the policy resulted from "substantial deliberation" with his staff and House counsel and that he formalized his moderation practices

---

[3] Plaintiff acknowledges that this Court previously concluded otherwise, relying in part on Defendant's commitment to viewpoint-neutral moderation and his unblocking of Plaintiff and all other blocked accounts. Order, ECF No. 53, at 6–7. Plaintiff respectfully maintains that Defendant did not demonstrate unambiguous termination, and preserves this argument.

8

because administration of his social media accounts was consuming too much time. Fine Decl. ¶ 9. But the relevant inquiry considers the circumstances surrounding the change in conduct, including whether the change resulted from "substantial deliberation" or instead reflects an attempt to manipulate the court's jurisdiction. *See Keohane*, 952 F.3d at 1268–69.

Thus, the question is not whether Defendant spent significant time revising the new policy with his staff, but whether the circumstances surrounding the change demonstrate genuine change of heart rather than an attempt to evade litigation. *See Keohane*, 952 F.3d at 1268–69. As this Court previously found, "Defendant has offered no other explanation independent of this litigation which may have motivated his change in conduct." Order, ECF No. 53, at 8.

While Defendant or his staff may have spent more time considering how to reformulate his social media policy, the issue this Court initially identified remains: the change appears motivated by a desire to obtain dismissal of this lawsuit. Nor does consultation with House counsel transform Defendant's policy into an institutional constraint: Defendant identifies no House rule, regulation, directive, or other House-wide action requiring him to retain the policy or limiting his authority over blocking decisions. *See Keohane*, 952 F.3d at 1268–69; *Wooten*, 747 F.3d at 1323.

Second, the manner in which Defendant ceased the challenged conduct provides no assurance of permanence. Defendant retains exclusive authority to block users from the @repfine account, and his moderation policy is not a House

9

rule, congressional regulation, consent decree, or other externally binding governmental enactment. Fine Decl. ¶¶ 10–12. No court order or other legally enforceable obligation prevents Defendant from changing course.

*Walker v. City of Calhoun* is instructive here. In that case, the Eleventh Circuit found abandonment of a challenged government policy insufficiently unambiguous where the change had not occurred through legislative action but rather the order of a single governmental decisionmaker who retained the ability to revert to the prior policy. 901 F.3d 1245, 1271 (11th Cir. 2018). Here too, the relevant change rests with the same individual decisionmaker: Defendant adopted the policy, Defendant retains blocking authority, and nothing external to Defendant prevents him from changing it.

That is precisely the circumstance in which courts find inadequate guarantees of permanence—as indeed this Court did in the context of its June Order in this case:

> Defendant has implemented a self-imposed social media policy adopted after litigation commenced, subject to his sole control to revise, abandon, interpret, and enforce … Put another way, Defendant may reverse course *with the click of a button.*

Order, ECF 53, at 9 (emphasis in original). The Court further observed that Defendant would not "have to do [any] serious hoop-jumping" to rescind his social media policy. *Id.* at 10 (quoting *Keohane*, 952 F.3d at 1269). That logic is equally true now, regardless of the revisions Defendant has made to his social media content moderation policy following the June Order.

10

The circumstances surrounding Defendant's cessation further undermine his claim to have permanently changed his conduct. As this Court previously noted, although Defendant unblocked Plaintiff on April 13, 2026, he did not inform Plaintiff or the Court until seven days later, on the eve of the preliminary-injunction hearing. Order, ECF No. 53, at 10. Citing *Harrell v. Florida Bar*, the Court explained that "if a governmental entity decides in a clandestine or irregular manner to cease a challenged behavior, it can hardly be said that its 'termination' of the behavior is unambiguous." *Id.* (quoting *Harrell*, 608 F.3d at 1266–67). When questioned about the delay, Defendant's counsel responded, "[w]e didn't have an obligation to tell the plaintiff." *Id.* The Court concluded that "[t]he credibility of Defendant's commitment to not block Plaintiff based on viewpoint again is undercut by this behavior." *Id.* This remains no less true than it did when the Court issued its June 22 Order.

Nor was the challenged blocking apparently an isolated occurrence. The FAC alleges that Defendant blocked Aaron Baker after Baker criticized Defendant's official positions. *See* FAC, ECF No. 56, ¶ 31. In considering the related *Baker v. Fine* litigation, this Court concluded that although two alleged instances of viewpoint-based blocking did not necessarily establish a "continuing practice," *Baker* suggested Defendant's conduct was neither "unintentional" nor an "isolated incident." Order, ECF No. 53, at 12–13. Nothing has changed in this regard.

Third, Defendant's approximately two-and-a-half months of compliance falls far short of the sustained evidence of abandonment that courts found sufficient in Defendant's authorities. Although Defendant emphasizes that previously unblocked accounts remain unblocked and the new policy remains in effect, Fine Decl. ¶¶ 9, 11, the entire period of compliance has occurred during this litigation. By contrast, the replacement policy in *Jews for Jesus, Inc. v. Hillsborough County Aviation Authority* had been consistently maintained for approximately three years. 162 F.3d 627, 629–30 (11th Cir. 1998). Two-and-a-half months of compliance during active litigation provides materially less objective assurance of permanent abandonment.

Defendant's principal authorities do not favor a different result. In *Troiano*, the government had decided to implement accessible voting equipment before receiving notice of the litigation and had already begun concrete implementation of that change. *Troiano v. Supervisor of Elections in Palm Beach County*, 382 F.3d 1276, 1284–86 (11th Cir. 2004). By contrast, Defendant's unblocking and replacement policy followed Plaintiff's resort to litigation.

Nor does *Keohane* establish mootness. Although the Eleventh Circuit cautioned against overemphasizing post-suit timing, there the Department of Corrections formally rescinded the challenged policy, physicians independently deemed the plaintiff's treatment medically necessary, and the Department provided "concrete assurances—in both word and deed" that treatment would continue. 952 F.3d at 1269, 1271. Here, Defendant offers principally his own

declaration and a moderation policy he retains authority to change. The distinction between those two circumstances is stark.  One involved a formal agency-wide policy change; this case is about a single congressman's alleged commitment, made after he was forced to face the inconvenience of lawsuits challenging his unconstitutional behavior.

The same distinctions undermine Defendant's remaining mootness authorities. *Coral Springs Street Systems, Inc. v. City of Sunrise*, *Saladin v. City of Milledgeville*, *National Advertising Co. v. City of Miami*, and *Atheists of Florida, Inc. v. City of Lakeland* involved stronger evidence that the challenged governmental practice had been abandoned, including formal governmental action, sustained implementation, or circumstances providing greater assurance that the challenged practice would not resume. *See Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328–30 (11th Cir. 2004); *Saladin v. City of Milledgeville*, 812 F.2d 687, 689 (11th Cir. 1987); *National Advertising Co. v. City of Miami*, 402 F.3d 1329, 1334 (11th Cir. 2005); *Atheists of Florida*, 713 F.3d at 593–95. Here, Defendant relies on an individually controlled policy adopted during litigation and a comparatively brief period of compliance.

Contrary to Defendant's contention, Plaintiff is not relying on his "secret intentions" to contest mootness. *See* Mot. to Dismiss, ECF 60 at 10 (citing *Nat'l Advert. Co.*, 402 F.3d at 1334). Rather, objective circumstances support recurrence: Defendant retains exclusive blocking authority and control over his replacement policy, his brief compliance has occurred entirely during this

13

litigation, and the related *Baker* litigation undermines his characterization of the challenged conduct as isolated. These circumstances support a reasonable expectation of recurrence in the absence of a court-enforced order. *See FBI v. Fikre*, 601 U.S. 234, 239-42 (2024) (holding that government's removal of Plaintiff from no-fly list and written promise not to put him back on the list fell short of "demonstrating it cannot reasonably be expected to do again in the future what it is alleged to have done in the past."). Defendant's declaration does not itself satisfy his "formidable burden" to establish that the challenged conduct cannot reasonably be expected to recur. *Id.* at 242–43.

Finally, Defendant's unblocking has not supplied all of the relief Plaintiff seeks. Plaintiff continues to seek prospective declaratory and injunctive relief against future viewpoint-based exclusion, which Defendant's unilateral restoration of access does not provide. Taken together, these circumstances provide a reasonable basis to believe that Defendant may resume the challenged conduct. Accordingly, Defendant has not established mootness.

## B. The Filing of an Amended Complaint Does Not Deprive Plaintiff of Standing

### 1. The Amended Complaint is Not a Supplemental Complaint

Defendant's standing argument rests on the mistaken premise that Plaintiff's FAC is, in substance, a supplemental pleading governed by Federal Rule of Civil Procedure 15(d). It is not.

Following dismissal of the original complaint without prejudice, Plaintiff filed the FAC pursuant to the Court's Order granting leave to amend. The FAC is based on the same conduct, raises the same claims, and asks for the same declaratory and injunctive relief. It merely corrected the procedural vehicle for obtaining relief against a federal official and adds allegations describing Defendant's subsequent unblocking and policy changes. Those later facts do not supply a new basis for liability; they address whether Defendant's voluntary cessation eliminated an existing controversy. Thus, even looking to substance rather than label, *see Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1252 n.11 (11th Cir. 2005), the FAC does not assert a new post-filing constitutional claim.

Defendant's reliance on *Lutter v. JNESO* is misplaced because that case involved a supplemental pleading premised on developments that occurred after filing the initial lawsuit. 86 F.4th 111, 125–26 & n.15 (3d Cir. 2023). Plaintiff does not invoke post-filing events to create Article III jurisdiction or establish a newly arising constitutional violation. To the contrary, Defendant incorporated those occurrences—his unblocking of Plaintiff and adoption of a replacement policy—to argue that the controversy no longer supports prospective relief. The constitutional injury underlying Plaintiff's claim remains Defendant's February 2026 viewpoint-based exclusion; the later allegations describe what happened after that controversy arose and bear on whether Defendant's voluntary cessation eliminated

15

it. Plaintiff thus does not rely on post-filing events to manufacture standing that was absent at the outset.

The Eleventh Circuit's decision in *Focus on the Family v. Pinellas Suncoast Transit Authority* supports Plaintiff's position. There, the court explained that "Article III standing must be determined as of the time at which the plaintiff's complaint is filed" and concluded that amended allegations that "plainly relate back" did not reset the Article III inquiry. 344 F.3d 1263, 1275 (11th Cir. 2003). The same principle applies here: the FAC preserves the underlying controversy rather than asserting a new constitutional injury arising from later events.

*Clark v. United Parcel Service, Inc.* is distinguishable for the same reason. There, the plaintiff sought to add new claims based on events occurring after filing of the original complaint; Plaintiff asserts no new claim based on Defendant's post-filing conduct here. 2019 WL 13292994, at *3 (N.D. Ga. Dec. 17, 2019), *report and recommendation adopted*, 2020 WL 13682483 (N.D. Ga. Jan. 10, 2020).

In sum, the FAC addresses the same First Amendment controversy, and does not assert a newly arising constitutional injury.

### 2. Plaintiff Had Standing When This Action Was Filed

Defendant's alternative standing argument conflates two distinct Article III inquiries. Standing focuses "on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed," whereas mootness concerns whether an initially live controversy remains so during litigation. *Davis*

16

*v. FEC*, 554 U.S. 724, 734 (2008). *See Laidlaw*, 528 U.S. at 189–92 (cautioning against "confus[ing] mootness with standing.").

Plaintiff possessed Article III standing when this action commenced. At the time the original Complaint was filed, Defendant had blocked Plaintiff from Defendant's official X account because of Plaintiff's protected speech, excluded him from participating in Defendant's official governmental communications forum, and prevented him from engaging with the account's interactive features on the same terms as other members of the public. Those injuries were concrete and particularized, directly traceable to Defendant's conduct, and redressable through the declaratory and injunctive relief Plaintiff sought. *See Lujan*, 504 U.S. at 561–62. Indeed, Defendant did not claim in his first motion to dismiss that Plaintiff lacked standing, an implicit acknowledgment that no such deficit existed.

Defendant's present theory is predicated on his own conduct subsequent to the lawsuit's filing: he unblocked Plaintiff and adopted a new policy. When a plaintiff possesses standing at filing and the defendant thereafter ceases the challenged conduct, the resulting question is whether that voluntary cessation has eliminated the controversy and the case is moot; it is not a standing issue. *See Laidlaw*, 528 U.S. at 189–91. Treating Defendant's post-suit unblocking as a new standing defect would invert the burden: voluntary cessation ordinarily requires Defendant to establish that it is "absolutely clear" the challenged conduct cannot reasonably be expected to recur, *id.* at 190, whereas Defendant's theory would require Plaintiff to prove anew that another blocking is "certainly impending." *Id.*

17

In other words, Defendant puts forth a novel legal doctrine whereby he may defeat Plaintiff's standing by altering his own conduct, which simply is not and never has been the law.

Defendant's reliance on *Clapper v. Amnesty International USA* and *Maisonet v. Commissioner, Alabama Department of Corrections* does not alter that conclusion. Those cases prohibit prospective relief based on conjectural future injury and are not relevant here. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–14 (2013); *Maisonet v. Comm'r, Ala. Dep't of Corr.*, No. 22-10023, 2022 WL 4283560, at *6 (11th Cir. Sept. 16, 2022).

Accordingly, Plaintiff had standing when this action commenced, and continues to have standing now.

### C. The Court Should Decline to Dismiss This Case Under the Prudential Mootness Doctrine

Defendant alternatively urges dismissal under the doctrine of prudential mootness. That request should likewise be denied.

Prudential mootness is a discretionary, equitable doctrine concerned with whether changed circumstances have "forestalled any occasion for meaningful relief." *Ingaseosas Int'l Co. v. Aconcagua Investing Ltd.*, 479 F. App'x 955, 962 (11th Cir. 2012); *see also Baker v. City of Atlanta*, 164 F.4th 850, 860 n.6 (11th Cir. 2026). That doctrine is inapplicable here, because Defendant has not and cannot provide the relief Plaintiff seeks.

Plaintiff seeks not only restoration of access to @repfine, but declaratory and permanent injunctive relief prohibiting future viewpoint-based exclusion to prevent future First Amendment injury. Defendant's unilateral unblocking provides neither a judicial declaration resolving the parties' constitutional dispute nor an enforceable prohibition against recurrence. And, for the reasons explained in Section A, Defendant's current assurances remain subject solely to his own whims. Meaningful judicial relief therefore remains available and is necessary, given the strong indications that the only reason Defendant implemented a new social media content moderation policy and then revised it to address some of the concerns articulated in the Court's June 22 Order was to avoid litigation.

Defendant's reliance on *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208 (10th Cir. 2012), and *Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372 (N.D. Ga. 2023), is misplaced. Those cases involved an independent federal recall regime through which NHTSA required and supervised the practical relief sought by the plaintiffs. Here, no comparable statutory scheme, independent agency, or outside enforcement mechanism supplies Plaintiff's requested declaratory and injunctive relief.

Nor does Defendant's appeal to comity justify dismissal. Plaintiff does not challenge an Act of Congress, congressional rule, or institutional action of the Legislative Branch; he challenges Defendant's own administration of an official social media account that Defendant himself controls. Although prudential mootness may account for comity among coordinate branches, *Ingaseosas*, 479 F.

App'x at 962, Defendant identifies no authority requiring deference to an individual legislator's unilateral assurances concerning his own challenged conduct. Defendant's status as a Member of Congress does not transform his individual administration of the @repfine account — or his assurances concerning that administration — into institutional action by a coordinate branch. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976) (explaining that federal courts ordinarily have a "virtually unflagging obligation . . . to exercise the jurisdiction given them.")

Accordingly, because meaningful relief remains available and no independent governmental process has displaced judicial relief, the Court should decline Defendant's invitation to dismiss this case as prudentially moot.

## V.    Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss the First Amended Complaint and permit Plaintiff to prosecute his claims.

Dated: August 12, 2026

Respectfully submitted,

/s/Malak Afaneh
Staff Attorney
mafaneh@adc.org

/s/Jenin Younes
President & National Legal
Director

jyounes@adc.org

AMERICAN-ARAB
ANTI-DISCRIMINATION
COMMITTEE
910 17th Street Northwest,
Suite 400
Washington, D.C. 20006
Telephone: (202) 244-2990

/s/ Hassan Shibly
MUSLIM LEGAL
Florida Bar # 94314
10730 N. 56th Street, Suite 208
Tampa, Florida 33617
hassan@shiblylaw.com

21

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2026, I caused the foregoing document to be filed via this Court's CM/ECF system, which I understand caused service on all registered parties.

*/s/Malak Afaneh*
Counsel of Record